GEORGIA ENGINEERING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28143.   Promulgated December 3, 1930.

*Lawrence A. Baker, Esq.,* and *Henry Ravenel, Esq.,* for the petitioner.

*P. M. Clark, Esq.,* and *C. C. Holmes, Esq.,* for the respondent.

534

OPINION.

TRAMMELL: The issues involved in this proceeding are (1) whether the petitioner is entitled to have included in its invested capital for 1920 and 1921 the amount of the unpaid distributions which had been credited to the stockholders' accounts but which, pursuant to the resolution of December 29, 1921, were credited back to surplus; (2) whether the petitioner is entitled to a deduction for 1921 of $115,000 representing the portion of the Rockmart Co.'s indebtedness that was disallowed by the respondent as a deduction for bad debts and (3) if the $115,000 is not an allowable deduction for bad debts in 1921 whether the amount is allowable in 1923. While the facts relating to the amount of $115,000 which was disallowed by the respondent are equally applicable to the remaining portion of the indebtedness, $64,660.07, the respondent has allowed the latter amount as a deduction. Although the respondent admits in his brief that the allowance of $64,660.07 was erroneous, our consideration of the deduction will be limited to the amount of $115,000, since he did not move at or before the hearing to increase the deficiency for 1921 because of such erroneous allowance.

The petitioner contends that the respondent should have included in its invested capital for 1920 and 1921 the amount of $177,228.78 representing an amount credited to stockholders pursuant to the resolution of January 24, 1917, but restored to surplus pursuant to the resolution of December 29, 1921. In this connection we have found the unpaid distributions remaining to the credit of the stockholders to be $178,450.98 on December 29, 1921, the amount contended for by the petitioner being $1,222.20 less than what we have found. The petitioner apparently arrives at the amount contended for by taking into consideration a withdrawal of $1,222.20 made by one stockholder in excess of the total distributions credited to his account. This amount in our opinion represents an account receivable in the hands of the corporation and should in any event remain in invested capital.

The first question is whether the amount of surplus of the petitioner credited to the stockholders and not drawn by them or offset by debts of the stockholders and subsequently by action of the directors restored to surplus by bookkeeping entries is a part of the petitioner's invested capital for the years involved. If such amount was distributed to the stockholders as a dividend it should come out of invested capital. The directors of the corporation by proper action directed the treasurer to apportion the earnings of the company to December 31, 1916, and to enter on the company's ledger to the credit of each stockholder his proportionate share thereof. Such amounts so credited were, however, to be paid as collections were made or securities sold would warrant. Of the total amount of the surplus credited to the stockholders, which amounted to $341,619.42, the stockholders actually received the benefit by offsetting their accounts or by actually withdrawing to a substantial amount, leaving on the books on January 1, 1920, $189,950.98, on January 1, 1921, $178,450.98, on December 29, 1921, $178,450.98, credited to the stockholders but which had not been drawn by them or which had not been used to offset their indebtedness to the corporation. If the expression "distribution of the earnings or profits" means the actual receipt thereof by the stockholders, then it is our opinion that these amounts should not be considered as distributions. The stockholders did not actually receive these amounts. In fact, they were not payable to the stockholders except as the collections were made or the sale of securities would warrant, and there is no evidence to show that such conditions warranted the actual payment of these undrawn amounts, although the corporation had sufficient surplus to have paid them.

For the purposes of section 31 (b) of the Revenue Act of 1917, the United States Supreme Court has held that the distribution there referred to meant distributions actually received by the stockholders. See *Routzahn* v. *Mason*, 275 U. S. 175, and *Edwards* v. *Douglas*, 269 U. S. 204; but section 31 (b) of the Revenue Act of 1917 referred to the taxation of distributions "received" by the stockholders and the tax was on that part of the annual income of the distributee for the year in which received. In view of this language in the statute, the Supreme Court held that distribution there meant actual receipt of the distribution by the stockholder.

There is a material difference between the statute which provides that a distribution shall be a part of the annual income of the distributee for the year in which received and shall be taxed at such rates and the question of law as to whether the invested capital of the corporation shall be reduced by a deduction of a dividend not presently payable to the stockholders. On the question of the invested

capital, it seems to us to be immaterial when the distribution was actually paid to or received by the stockholders. The question here is was the surplus of the corporation reduced by the action of the directors during the years involved, regardless of when, if ever, the stockholders actually received the distribution.

In the case of *W. E. Caldwell & Co.*, 6 B. T. A. 47, we had occasion to consider and discuss the effect on invested capital of the declaration of a dividend, and held that, since such a declaration created the relationship of debtor and creditor, the amount thereof should not be included in invested capital. We see no reason to repeat here what was there said.

In our opinion this case on its facts is somewhat similar to (although a stronger case) that presented in *Zenith Milling Co.*, 8 B. T. A. 1279, which was affirmed by the Circuit Court of Appeals for the Eighth Circuit, 41 Fed. (2d) 905. In this case both the stockholders and the corporation considered that the declaration of the dividend or distributions of profits pursuant to the resolution of the directors created an indebtedness by the corporation to the stockholders, and, in fact, to the extent that the stockholders owed the corporation, there was an effective offset of accounts. Some stockholders withdrew additional amounts. We think that the amounts not withdrawn and not offset were just as much obligations or indebtedness of the corporation as those which were withdrawn or offset. There was no question as to the impairment of the capital stock at the time when the distributions were ordered. It may well be true that the directors had no authority to declare a dividend which would impair the capital stock. But the distributions here did not have that effect. See *Spencer* v. *Low*, 198 Fed. 961.

The petitioner has cited the cases of *Eaton* v. *English & Mersick Co.*, 7 Fed. (2d) 54; *Davidson & Case Lumber Co.* v. *Motter*, 14 Fed. (2d) 137; *Flynn* v. *Haas Bros.*, 20 Fed. (2d) 510; and *Geo. Feick & Sons Co.* v. *Blair*, 26 Fed. (2d) 540. In our opinion this case is distinguishable from those cases on the facts, and comes within the principle of the *Zenith Milling Co.* case, *supra*. The facts in this case show a formal declaration of the dividend. Under the authorities, we think this constitutes a sufficient segregation of the surplus on hand in a sufficient amount to have paid the dividend. The fact that it was only to be paid when collections were made or securities were sold affects only the date of payment. In any event the accounts of the stockholders were credited with the amount of the surplus on the books. Their accounts due the corporation were offset. Some actually withdrew the amounts credited to them—one withdrew an amount in excess thereof. Thus a portion of this dividend declared was actually paid. The only authority for the

crediting of the accounts and withdrawing thereof in part was the declaration of the board of directors.

We do not think that any further action in the way of a declaration of a dividend was necessary in order to warrant further distribution of surplus—a further drawing against the amounts credited to stockholders of the surplus. The corporation actually had the securities which it would have sold at any time, and the accounts receivable were principally from stockholders representing previous withdrawals and also accounts due from municipalities. We think, under such circumstances, the provision as to actual payment of the dividends declared contemplated a payment within a reasonable time in the future, rather than any uncertainty as to whether they would ever be paid at all. The accounts due from the municipalities are not shown to have been doubtful, nor was the Rockmart indebtedness considered doubtful at the time of the resolution. The resolution, in any event, does not limit the collections to particular debts then owing. Whenever collections were made or securities sold the dividends were to be paid. The securities could doubtless have been sold at any time and the corporation had ample surplus out of which to have made the distribution.

In the case of *Northwestern Marble & Tile Co.* v. *Carlson*, 133 N. W. 1014, the court had a case somewhat similar to the one before us. The court said:

Where the board of directors adopted a resolution "that a dividend of 6 per cent. be declared on the common stock, payable * * * at such time as the finances of the firm will in the judgment of the board of directors warrant," and the stockholders were notified at their annual meeting that such a dividend had been declared, and the company had on hand sufficient undivided profits to pay such dividend, it was held that this amounted to the declaration of a dividend, and that no further action by the directors was necessary in order to segregate the share of each stockholder.

To the same effect see *Wallin* v. *Johnson City Lumber Co.*, 188 S. W. 577.

There is no material difference between paying a dividend when the finances in the judgment of the directors would warrant and paying a dividend when collections were made or securities sold where there was sufficient surplus on hand and sufficient accounts to meet the payments were not considered doubtful when the declaration was made but merely not due, and aside from the fact that the corporation had securities which it could sell, and also considering the fact that the corporation was carrying on business and making profits and continuing to make collections. The resolution in this case is certainly no more indefinite than the resolution in the *Northwestern Marble & Tile Co.* case, *supra*. In either case there might never be an actual payment to stockholders, but this is not the

question. The question really is, was a debt created. See also *McLaren* v. *Crescent Planing Mill Co.* (Mo.), 93 S. W. 918. The fact that title to the distribution may not pass to the stockholder until actual payment in our mind is not important. Here we are dealing not with the stockholder and his income, but the corporation and its surplus as it may be affected by its indebtedness created, whether paid or not within the taxable period.

From a consideration of all the facts in this case we are of the opinion that the corporation by the formal action of its directors segregated and effectively distributed its surplus here involved to its stockholders. It not only ordered the distribution to be made, but actually credited the amounts on the books of the corporation to its stockholders. It may be true that the crediting of the amounts on the books to the stockholders might not have vested title in the stockholders or amounted to a payment to the stockholders until actual payments or until such amounts became unqualifiedly subject to their demands, especially since the amounts thereof were not payable until the collections or sale of securities warranted. This question of payment to the stockholders of the indebtedness created is not necessary to be discussed here. In our opinion, in any event, it was a sufficient distribution and segregation to at least create an indebtedness on the part of the corporation. This is what we are concerned with here. The indebtedness so created reduced the surplus.

With respect to the resolution of January 28, 1919, there is testimony to the effect that the distribution authorized was paid to the stockholders and in the petitioner's brief it is stated that the amount · of such distribution was fully withdrawn by the stockholders subsequent to the passing of the resolution. While this is somewhat in conflict with the documentary evidence introduced, we see no similarity between the situation as respects that resolution and the cases cited by the petitioner where the distributions had not been paid or withdrawn. But in any event, whether the entire distribution authorized on January 28, 1919, was paid in full or only in part, we think there was a distribution within the meaning of the statute sufficient to create an indebtedness of the corporation. If we should hold that the distributions authorized on January 24, 1917, and January 28, 1919, were not dividends or distributions, it would follow that all amounts withdrawn by the stockholders subsequent to January 24, 1917, constituted indebtedness of the stockholders to the corporation, a conclusion which the record in nowise supports. Neither the corporation nor the stockholders so considered it. It would also amount to holding that the corporation did not offset the indebtedness to the stockholders to it when in fact it did. We think the established facts warrant us in holding that the surplus was distributed by the declaration of dividends; that the portion thereof

which was drawn by the stockholders, or was offset by indebtedness due by stockholders, was actually paid, and the remainder constituted unpaid indebtedness of the corporation.

This question really narrows itself to whether the dividends or distributions ordered to be made by the resolutions of 1917 and 1919 constituted legal dividends; that is, whether there were net profits out of which they could have been declared. In determining whether dividends were lawfully made, the transaction must be viewed in the light of the time of its occurrence, and if net profits or surplus existed at that time the payment of the dividend is not rendered unlawful or illegal by subsequent events, even insolvency of the corporation, and if the assets of the corporation are valued honestly and fairly in view of all the facts known at the time of declaration, the dividend is not rendered unlawful by the fact that such assets subsequently proved to be worth less than the valuation placed upon them at the time of the declaration. *Spencer* v. *Low, supra; Maine* v. *Mills*, 16 Fed. (2d) 974; *Quinn* v. *Quinn Manufacturing Co.*, 167 N. W. 898; *Northern Bank, etc., Co.* v. *Day*, 145 Pac. 182. It may be conceded, however, that a mere ignorance of the actual facts as to the valuation of the indebtedness at the time of the declaration of the dividend would not make a dividend legal if the facts existing were such that there were insufficient assets or net surplus to warrant the dividend, but here the directors had actual knowledge of all the facts; in fact, they had a most intimate knowledge of all the conditions on account of the intercompany relationship, the interlocking directorship, the common stock ownership, and the business conditions. It may well be true that, if the petitioner in some previous year or years had undertaken to force collection of the indebtedness against the Rockmart Co. it would have resulted in the liquidation of that company. However, this does not mean that indebtedness was not collectible. The fact that by paying the indebtedness it would have left the Rockmart Co. in a more precarious condition and unable to carry on its business is not sufficient to warrant the petitioner in taking the position that the indebtedness could not have been collected. There is no testimony that the indebtedness was worthless in 1917 or 1919. If it be true that the enforced collection thereof would have caused a liquidation of the Rockmart Co. either in those years or any other year, that fact might have resulted in a loss to the stockholders of the Rockmart Co., consisting of most of the stockholders of the petitioner company, but that is a fact with which we are not concerned in this case. All we are concerned with here is, so far as this question is concerned, whether the petitioner had surplus in 1917 and 1919, at the time the distributions were ordered in those years, to pay or out of which such distributions could be declared without impairing the capital stock.

In view of the foregoing, it is our opinion that the dividends, having been declared out of surplus, constitute legal dividends and consequently legal indebtedness of the corporation to the stockholders in the amount thereof, and as a consequence the invested capital should be reduced to the extent of the surplus so ordered to be distributed.

The petitioner contends that it is entitled to a deduction in 1921 of $115,000 representing the portion of the Rockmart Co.'s indebtedness that was disallowed by the respondent as a deduction for bad debts. In support of its contention the petitioner urges that the debt owing to it by the Rockmart Co. was ascertained by it to be worthless in 1921 and charged off in that year. While there is no controversy between the parties as to the indebtedness having been charged off in 1921, the respondent contends in his brief that the indebtedness was not ascertained to be worthless in 1921, but had been so ascertained in prior years.

On the question of the indebtedness of the Rockmart Co., evidence was introduced as to the values of assets carried on the books of the company in 1921 and the amount of indebtedness, including that secured by mortgage, was introduced. While there was testimony to the effect that some of the assets were not worth the amounts at which they were carried on the books, the record is silent as to what the values of these assets were. The balance sheet discloses a deficit at the end of 1921 of $132,021.26. In determining this deficit, however, there have been included capital stock liability in the amount of $125,000 and the amount owing to the petitioner of $96,410.76 on open account and notes payable of $83,249.31.

It may well be that the petitioner had an intimate knowledge of all the affairs of the Rockmart Co., including the values of its assets, but it did not supply us with evidence from which we could make a determination as to the value of the assets out of which the petitioner might have collected its indebtedness in 1921. The fact that some of the assets were not worth the amounts at which they were carried on the books is not sufficient evidence to warrant us in saying that they were not worth in excess of $44,800, the amount testified to as being the amount of principal and interest on the bonds in 1921, representing $35,000 principal and $9,800 interest on the bonds. The assets as shown by the books were worth $178,969.10 in excess of the mortgage and interest. It may well be that the assets were not worth this amount, but in order for us to determine that the indebtedness was ascertained to be worthless in 1921, we must know the facts upon which such ascertainment was made, and for this purpose, we must know what assets the petitioner had recourse to. If the petitioner had evidence as to the value of these assets it should have introduced it.

It may well be true, as testified to by the petitioner, that, if it had undertaken to force collection of the indebtedness in the years prior to 1921, it would have resulted in the bankruptcy of the Rockmart Co. This fact is not sufficient, however, to warrant us in determining that the indebtedness was worthless or that the petitioner could not have collected its indebtedness or a substantial part thereof even if the Rockmart Co. had been placed in bankruptcy. Undoubtedly, such action would have resulted in loss to the stockholders of the Rockmart Co., but we are not concerned with such loss here.

The burden of proof was upon the petitioner to show that the indebtedness was ascertained to be worthless in whole or in part in 1921. The evidence introduced is insufficient to establish this fact. The pleadings put in issue the question as to whether the indebtedness was ascertained to be worthless in 1921. The fact that the respondent argued in his brief that it was ascertained to be worthless in some previous year does not relieve the petitioner of the burden of showing that it was ascertained to be worthless as well as charged off in 1921.

In view of the foregoing, it is our opinion that the petitioner has not shown that it is entitled to the deduction claimed with respect to the indebtedness of the Rockmart Co. as a debt ascertained to be worthless and charged off.

The petitioner contends that, if it is not entitled to a deduction as a bad debt of the indebtedness of the Rockmart Co. in 1921, it is entitled to the deduction in 1923, when the assets of the Rockmart Co. were sold under foreclosure of a mortgage and no amount was left out of which the indebtedness could be paid.

The indebtedness in 1923 was clearly ascertained to be worthless, as demonstrated by the fact that in that year the property was sold under a mortgage foreclosure for an amount just sufficient to pay the mortgage indebtedness, with interest, leaving nothing to the petitioner. The fact that the petitioner claimed that it had ascertained the worthlessness of the debt in 1921 does not deprive it of the deduction in 1923 when the facts show that it was actually worthless in 1923. The ascertainment, that is, the finding out or making certain of the fact, occurred in 1923. The fact also appears that in 1923 the debt had already been charged off and remained charged off. In that year, therefore, the two requirements as to ascertainment of worthlessness and charge-off existed. See *Mason Machine Works Co.*, 3 B. T. A. 745.

For the foregoing reasons, we are of the opinion that the petitioner is entitled to a deduction in 1923 on account of such worthless debt.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*