Dixie Margarine Company, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 79372. Promulgated September 8, 1938.

*George N. Murdock, Esq.*, for the petitioner.
*Ralph E. Smith, Esq.*, and *Freeman R. Paulson, Esq.*, for the respondent.

### OPINION.

Hill: Respondent determined a deficiency in petitioner's income tax liability for the year 1932 in the amount of $16,775.60. Petitioner showed on its return for the taxable year a net loss of $112,508.47, which respondent adjusted by adding to income "Refund of stamp taxes $234,512.86", with the explanation that during 1932 petitioner received refunds of stamp taxes in the amount of $241,819.64, representing the aggregate of stamps deducted as cost of sales in prior years, of which total amount of refunds $7,306.78 was used to reduce a net loss claimed for 1931 on the 1932 return. Petitioner assigned as error the action of respondent in adding to income the amount of the refunds stated, and contends that such amount does not constitute income taxable to it in 1932.

The issue was submitted on evidence consisting of a stipulation of facts, oral testimony, and certain documentary exhibits. The facts were fully covered by the stipulation of facts. The oral testimony and documentary exhibits presented only corroborative evidence of the facts stipulated. We adopt the stipulated facts as our findings of fact, which, in so far as deemed necessary to a discussion of the issue, will be set out hereinbelow. In the stipulation it is stated that in 1932 respondent refunded to petitioner the amounts paid as stamp taxes during the periods specifically mentioned in two certain claims for refund, "being $241,819.64 and $56,772.03, respectively." Respondent's notices of adjustment, introduced in evidence by petitioner as Exhibits 12 and 14, show the amounts of

refunds allowed were $184,953.13 and $56,772.03, respectively, while the deficiency, as above stated, was computed on the basis of total refunds of $241,819.64. However, these discrepancies appear to be of no materiality in deciding the issue presented.

Petitioner is a corporation, organized under the laws of Tennessee, with its principal office at Memphis. Its business was the manufacture and sale of food products, the principal one being mixtures of vegetable oils, salt, and skimmed milk, with or without coloring matter, which respondent called and treated as oleomargarine.

During the period from March 15, 1923, to June 10, 1931, petitioner was engaged in the manufacture and sale of the above described product. The Bureau of Internal Revenue construed the Oleomargarine Act (being section 2 of the Act of August 2, 1886, and section 8 of that act as amended by section 3 of the Act of May 9, 1902) as applicable to petitioner's product, and accordingly during the aforementioned period petitioner paid various amounts as a stamp tax on its product, selling only to wholesalers and retailers who held annual licenses as prescribed by said act, and petitioner received and paid for annual licenses as a manufacturer of oleomargarine.

In 1927 petitioner concluded that its product was not oleomargarine, and was not taxable as such, under the law. Thereafter, on November 30, 1929, petitioner filed a claim for refund of amounts paid from December 1, 1925, to October 30, 1929, which claim was rejected by the Commissioner on December 26, 1929. On December 17, 1931, petitioner filed suit in a district court for the amount sought to be recovered in the claim for refund.

On September 14, 1931, petitioner filed a claim for refund of the amounts paid from November 1, 1929, to July 1931, and that claim was rejected by the Commissioner on December 14, 1931.

On February 15, 1932, the Supreme Court decided the case of *Miller* v. *Standard Nut Margarine Co.*, 284 U. S. 498, in which it was held that a product of the character of that of petitioner did not come within the taxing statutes. The Commissioner accordingly, on or about April 7, 1932, reopened the two claims referred to above and refunded to petitioner the amounts paid during the periods specifically mentioned in those claims. The amounts refunded, however, did not include $87,412 which had been paid by petitioner between March 15, 1923, and December 1, 1925, for the reason that the claim for refund was not presented within four years after the purchase of the stamps and refund was barred by the statute of limitations.

On June 15, 1935, suit for recovery of the $87,412, above mentioned, with interest, was brought in the Court of Claims. Re-

spondent filed a demurrer, which was sustained in November of that year, and the petition dismissed (12 Fed. Supp. 543) on the ground that the amount was not refundable because of statutory prohibition. Petitioner then filed a petition for writ of certiorari in the United States Supreme Court and on March 2, 1936, its petition was denied (297 U. S. 713).

The aggregate amount paid by petitioner to the collector for stamp taxes from March 1923, when it began business, to November 28, 1925, was $87,412, and the aggregate amount paid from December 1925, to and including 1931, was $241,819.64, or a total for both periods of $329,231.64.

These sums were paid to the collector in advance in cash, and the licenses and stamps procured therefor were under the law as construed by respondent a requisite for the conduct of the business or sale of the goods. Corporation income tax returns were filed annually by petitioner, in which these sums were included in gross income and taken as deductions under the head of revenue stamps used, which were in turn included as cost of goods sold.

Prior to the filing of the petition herein, the period of limitation for the assessment of a deficiency in Federal income tax for any of the years 1923 to 1930, inclusive, had expired, and no deficiency in such tax may now be assessed against petitioner for any of such years.

Respondent affirmatively pleaded estoppel, and contends that, since petitioner deducted the so-called oleomargarine stamp taxes in computing its income tax liability for years in respect of which the period of limitation has run, petitioner should not now be permitted to change its position to the prejudice of the Government and deny that the amounts refunded constituted taxable income for the year 1932. Much is said in the briefs of both parties respecting this matter, but we think it unnecessary in the present case to discuss application of the principles of estoppel or similar doctrines. The controlling question presented here is whether the amounts of the stamp taxes refunded to petitioner in 1932 constituted income taxable for that year in the circumstances disclosed.

As we said in *South Dakota Concrete Products Co.*, 26 B. T. A. 1429, 1432, and have repeated in many subsequent decisions:

\* \* \* income-tax liability under the Federal revenue acts is to be determined on annual periods on the basis of facts as they existed in each period, and when an adjustment occurs which is inconsistent with what has been done in the past in the determination of tax liability, the adjustment should be reflected in reporting income for the year in which it occurs.

In the cited case it was held that where amounts embezzled and offset against income in prior years were subsequently recovered, they must be reported as income for the year of recovery.

474

In conformity with the legal principle above stated, it has also been held that where a debt, deducted from gross income of a prior year as worthless, is subsequently collected in part, the amount recovered must be returned as taxable income for the year of recovery;[1] that expenses paid and deducted in one year but later recovered must be included in the taxpayer's gross income for the year of recovery;[2] that, where losses resulting from fire were deducted from gross income, insurance subsequently received constituted taxable income;[3] and that additional compensation received in 1920 for transporting United States mails during the years 1916 and 1917, but not returned as income for those years, constituted taxable income for 1920.[4]

Broadly stated, the reason for the rule is that where unforeseen events later disclose that deductions were improperly taken from gross income in prior years, or amounts were improperly omitted from gross income, and adjustment of the tax liability for such prior years can not be made because barred by limitations or is impractical for other reasons, the amounts subsequently received, recovered, or canceled must then be included in gross income to offset such deduction or omission.

Applying the principle to facts substantially similar to those of the instant case, we held in *Houbigant, Inc.*, 31 B. T. A. 954, that where the taxpayer received a refund of customs duties during the fiscal year ended June 30, 1931, which it had paid and deducted from gross income in its tax returns for prior years, the amounts recovered constituted gross income for the taxable year. Our decision was affirmed at 80 Fed. (2d) 1012.

In *Victoria Paper Mills Co.*, 32 B. T. A. 666, the petitioner obtained judgments against the city of Fulton, New York, in 1931 for the recovery of property taxes paid in excess for prior years, which it had deducted from gross income in its Federal income tax returns. Petitioner assigned the judgments to a bank and received credit for the value thereof. We held the amount was taxable income of the petitioner for the year 1931.

In *Chevy Chase Land Co.*, 34 B. T. A. 150, the petitioner paid special improvement taxes on its real estate and included the amounts in the cost of the real estate, which it sold in later years but prior

---

[1] *Iberville Wholesale Grocery Co., Ltd.*, 17 B. T. A. 235; *Putnam National Bank*, 20 B. T. A. 45; affd., 50 Fed. (2d) 158; *Askin & Marine Co.*, 26 B. T. A. 409; *Davidson Grocery Co. v. Lucas*, 37 Fed. (2d) 806; *Commissioner v. Liberty Bank & Trust Co.*, 59 Fed. (2d) 320.

[2] *Burnet v. Sanford & Brooks Co.*, 282 U. S. 359; *Charleston & Western Carolina Railway Co.*, 17 B. T. A. 569; affd., 50 Fed. (2d) 342; *Atlantic Coast Line Railroad Co.*, 23 B. T. A. 888. Cf. *B. F. Avery & Sons, Inc.*, 26 B. T. A. 1393.

[3] *Cooper v. United States*, 9 Fed. (2d) 216.

[4] *International-Great Northern Railroad Co.*, 24 B. T. A. 726.

to 1932. In 1932 the law under which the taxes had been assessed was declared unconstitutional and the amounts were refunded. Since petitioner had added the refunded taxes to the cost of its real estate in computing taxable gain on sales, we held the amounts recovered were taxable as income for the year recovered.

In *Charles W. Nash*, 34 B. T. A. 675, the petitioner paid income taxes to the State of Wisconsin for the years 1926 to 1931, inclusive, which amounts he deducted on his Federal income tax returns. The Wisconsin statute was declared unconstitutional and the income taxes paid by petitioner thereunder were refunded to him in 1932. We held the amounts so refunded constituted income to the petitioner for 1932.

Petitioner argues that the cited cases are not controlling here, for the reason that the refunded amounts in controversy were claimed and allowed as deductions in the prior years due to a mutual mistake of law; that in fact they did not represent taxes paid and were not properly allowable deductions; hence should not be treated as taxable income of the year in which refunded. We are unable to agree.

In *E. L. Bruce Co.*, 19 B. T. A. 777, and *Charles F. Fawsett*, 30 B. T. A. 908, we held that amounts paid as taxes under unconstitutional and void state statutes, where such amounts had not been later refunded and refunds were barred by limitations or otherwise, were allowable deductions in computing Federal income tax liability for the years in which paid. In the present case petitioner is not seeking deductions of the amounts in controversy from income of prior years; such deductions have already been allowed, and adjustment of the tax liability for those years is barred by limitations. But we think the amounts were none the less properly allowable deductions in the years of payment because they were paid pursuant to void regulations of the Commissioner instead of a void statute. Such amounts have been held *not* to constitute allowable deductions from gross income for the year in which paid *only* in those cases where refund was received prior to the final determination of the tax liability for the year in which the refunded payment was made. *Inland Products Co.*, 10 B. T. A. 235; affd., 31 Fed. (2d) 867; *Mary W. Leach*, 16 B. T. A. 781; affd., 50 Fed. (2d) 371; and compare *Joseph V. Horn*, 23 B. T. A. 1131. Obviously, these latter decisions have no application here, for the reason that the refunds were received subsequent to final determination of the petitioner's tax liability for the prior years.

It should be borne in mind that the disbursements made by petitioner for stamp taxes in the years prior to the taxable year were not deducted as "taxes paid or accrued" in computing net income of the respective years, but petitioner received the benefit of the deductions as a part of cost of its product manufactured and sold

in such years. Petitioner, therefore, actually and in fact derived additional income at the time of the receipt of the refunds equal to the amount thereof. The net result is precisely the same as if petitioner had received the refunded amounts as additional proceeds of sale instead of a reduction of the cost basis of goods sold. In such event, it seems obvious that the entire amount would represent taxable income of the year of receipt. Compare on this point *Chevy Chase Land Co.*, supra, and *Houbigant, Inc.*, supra. In the latter case, at page 956, we said:

> The facts in this case show that in the income tax returns filed by the petitioner for the years 1924 to 1930, inclusive, the petitioner claimed and was allowed the deduction of the full amounts of the customs duties paid. They were not allowed under the name of customs duties, but in increased cost of goods purchased by the petitioner. Having been deducted in prior year returns, if they are not taken up in the gross income when recovered, the petitioner clearly, over a series of years, escapes tax upon gains and profits equaling the amount of the customs duties recovered. It can not be presumed that such a result was contemplated by Congress. Furthermore, from any standpoint, the petitioner was enriched by the recoveries of the import duties in the fiscal year ended June 30, 1931. The argument that the income received from this source is exempt from tax has no support in the law.

Petitioner here further asserts that it was not enriched by the receipt of the refunds in controversy, since the Government retained $87,412, paid for stamp taxes during the period March 15, 1923, to December 1, 1925, refund of which is barred by limitations, and insists it would be inequitable to tax it upon the amounts refunded for the reason that the amount of such tax is much less than the amount of the retained stamp taxes.

On this state of facts petitioner urges a right to recoup the money so retained by respondent to the extent of the deficiency, if any, in income tax determined on the basis of refunds in 1932 of the money paid by it in the years subsequent to 1925 for oleomargarine stamp taxes and license fees. The claim of recoupment must be denied. The money so paid in the years 1923–1925 is no part of, and has no connection with, the money refunded to it in 1932. This proceeding involves in no way the transaction of such payment in the years 1923–1925. Recoupment is "confined to matters arising out of, and connected with, the transaction or contract upon which the suit is brought." Waterman on Set-off and Recoupment (2d ed.), p. 480; *Crossett Lumber Co. v. United States* (C. C. A., 8th Cir.), 87 Fed. (2d) 930; *Bull v. United States*, 295 U. S. 247. Under this view the question of whether the claim of recoupment in the instant case is barred by the statute of limitations loses importance.

On authority of the decisions hereinabove cited, the deficiency determined by respondent is approved.

*Judgment will be entered for the respondent.*