THE NATIONAL BANK OF COMMERCE OF SEATTLE, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89720.   Promulgated June 9, 1939.

*Thomas N. Fowler, Esq.,* and *C. L. Stone, C. P. A.,* for the petitioner.

*B. H. Neblett, Esq.,* for the respondent.

## OPINION.

Kern: The primary question presented by this proceeding is whether the recoveries of debts charged off as worthless in previous years by a bank on its own initiative constitute taxable income in the year of their recovery by such bank, even though the prior charge-off accomplished no reduction in tax liability in the year in which they were charged off.

It is now well settled that where amounts previously deducted from income for losses, expenses, bad debts, taxes, etc., which effect an offset of taxable income, are recovered in subsequent years, such recoveries "should be reported as a part of gross income for the year in which * * * recovered." *Estate of William H. Block*, 39 B. T. A. 338; *Dixie Margarine Co.*, 38 B. T. A. 471. The converse of this proposition is also true—that if such amounts so deducted did not effect an offset of taxable income for the year in which deducted, then recoveries in subsequent years should not be included in gross income in the years of recovery. *Central Loan & Investment Co.*, 39 B. T. A. 981. Therefore, regardless of whether the debts were

charged off, in the instant proceeding, on the bank's own initiative or on the order of a bank examiner, if the charge-off accomplished no reduction in tax liability in the year in which they were charged off, the recoveries of such debts in a subsequent year would not constitute income in the year of their recovery.

As pointed out in *Central Loan & Investment Co.*, *supra*, this conclusion accords with the views expressed by the General Counsel of the Bureau of Internal Revenue in G. C. M. 18525 (C. B. 1937–1, p. 80) and G. C. M. 20854 (1939 Int. Rev. Bul. No. 9, p. 2).

A question is involved in this proceeding which was not present in the *Central Loan & Investment Co.* case, in that here a large part of the debts upon which recoveries were made by petitioner had been charged off in a prior year from the books of other corporations which were then the owners of the debts and deducted by them without offsetting any tax liability on their part. The debts were later transferred to petitioner. Will our conclusion be the same as to the recoveries made on these debts thus transferred to petitioner prior to the taxable year?

Respondent contends that all of the debts involved herein were acquired by purchase from the banks whose assets were taken over by petitioner; that the purchase price was allocated by petitioner solely to the sound or ledger assets, which included the debts of unquestioned value, and not to the debts of questionable value which had been charged off as worthless by the transferor banks and which were not carried as assets on petitioner's ledger; and that, therefore, the nonledger assets cost petitioner nothing and could have no basis in the accounts of petitioner. It follows, respondent argues, that the recoveries made by petitioner upon the debts which were not carried as assets upon petitioner's ledger must be considered as income.

Petitioner contends that these debts were acquired by petitioner in the course of a reorganization and not by purchase, regardless of how the transaction was treated on the books of petitioner. In 1933 the Marine Bancorporation owned from 88 percent to 94.5 percent of the stock of certain small banks located in the vicinity of Seattle. In that year it was decided by the Marine Bancorporation that the business of these banks should be carried on as branches of petitioner. Pursuant to a plan of reorganization, and in order to accomplish this purpose, these banks transferred all of their assets to petitioner in 1933 subject to their liabilities. Immediately after each of these transfers the Marine Bancorporation was the owner of over 99 percent of the stock of petitioner. Therefore, petitioner contends, these transactions constituted a reorganization within the meaning of section 112 (i) (1) (B) of the Revenue Act of 1932 (section 112 (g) (1)

(C), Act of 1934), and the basis of the accounts to petitioner was the same as to the transferors; that is, cost.

We agree with petitioner that these transactions do constitute a reorganization within the definition of the statute set out in section 112 (i) (1) (B) of the Act of 1932. However, that particular section is only a definition and does not provide that in all transactions which may be classified as reorganizations no gain or loss shall be recognized. Section 112 (a) states the general rule that upon the sale or exchange of property the gain or loss shall be recognized "except as hereinafter provided in this section." Subsections (b) to (h) inclusive of section 112 set out the exceptions to which subsection (a) refers. These subsections are not applicable to a reorganization such as the one consummated in the instant proceeding. Therefore, we must conclude that gain or loss shall be recognized in the transactions resulting in the reorganization involved here. Those transactions may be briefly stated as follows: The small transferor banks charged off prior to the reorganization certain of their assets. They then transferred all of their assets to petitioner, and in return, petitioner assumed all of their liabilities. The liabilities thus assumed equaled the amount of assets remaining on the books of the small transferor banks and were set up by petitioner on its books as the purchase price allocated to the assets which remained on the books of the transferor banks at the time of transfer and which, after the transfer, were carried on the books of petitioner. Petitioner did not carry as assets on its books the items which had been charged off by the transferor banks. Since these transfers were made in connection with a reorganization (even though not a tax-free reorganization) and immediately after the transfers a control in the property transferred remained in the same persons (i. e., the Marine Bancorporation), section 113 (a) (7) of the Act of 1934 is applicable. Cf. *Piedmont Financial Co., Inc.*, 26 B. T. A. 1221. The pertinent provisions of that section are as follows:

If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. * * *

Applying that section to the facts of the instant proceeding, it becomes necessary to determine whether a gain or loss was recognized to the transferors upon such transfers. We are of the opinion that there was a loss to the transferors upon such transfers. The transferors received from the petitioner an assumption of their liabilities equivalent to the value of their ledger assets which, we must con-

clude from the evidence, were worth the amount at which they were carried on the books of the transferors. In return petitioner acquired all of the assets of the transferors, including the nonledger assets which had been charged off the books of the transferors. As to these nonledger assets there is evidence that the transferor banks and petitioner considered them to be of some value, but there is no evidence as to what that value was. The transferor banks, by charging off these assets prior to the transfers and deducting them as bad debts in their income tax returns, treated them as of no value, and petitioner, after the transfers, treated them in the same way by not carrying them as assets on its books and allocating the liabilities assumed as the purchase price of the ledger assets. We are of the opinion that whatever value the nonledger assets had was lost to the transferors at the time of the transfers and, therefore, the basis of such assets to them at that time was zero. It follows, pursuant to section 113 (a) (7), that the basis of such assets to petitioner, the transferee, would also be zero. Since petitioner acquired by purchase accounts which had as to it a basis of zero, any collections made by petitioner on such accounts would constitute income. Cf. *Chatham & Phenix National Bank*, 1 B. T. A. 460; *Madison & Kedzie State Bank*, 1 B. T. A. 922. On this issue our decision is for respondent.

One more question remains for our decision. In 1933 petitioner and three of the smaller transferor banks deducted as bad debts some 16 items in a total amount of $4,357.44 which had been charged off in that year, but which had not been ascertained to be worthless in 1933. As set out in our findings, 4 of these items were charged off by petitioner while 12 were charged off by the transferor banks and then transferred to petitioner. The deduction of these items did not effect an offset against the taxable income of the banks to which these debts were owed. In that year the petitioner acquired all of the debts in connection with the reorganization which we have already described. In 1934 petitioner ascertained these debts to be worthless and claimed them as a deduction in that year. They were not charged off the books of petitioner in 1934, since they had been charged off the books of petitioner and its transferors in 1933. Since we have just decided that the debts which were charged off by the transferor banks in 1933 and then transferred to petitioner had a basis in the hands of petitioner of zero, it is obvious that the 12 items thus transferred to petitioner in 1933 can not be deducted by it under any circumstances because no loss has been sustained by it. However, the 4 items which were at all times the property of petitioner are properly deductible under the rule of *George H. Fraser*, 6 B. T. A. 997, and *Georgia Engineering Co.*, 21 B. T. A. 532.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

LEECH, dissenting on the last issue: The tax effect involved in the decision of this issue is slight. However, the rule laid down seems to me to be important enough to warrant comment.

The four debts in question under this issue were charged off the books of the taxpayer in 1933. Deductions were claimed therefor as worthless debts in its return for that year. This resulted in an addition in that amount to its net loss for such year, which would have been carried over to 1934 had it not been for the elimination of the right to carry over net losses, by the Revenue Act of 1934, section 117. The debts were ascertained to be worthless in 1934 but no charge-off then occurred—since, of course, they had already been charged off once and were never thereafter restored to petitioner's asset account.

The majority holds the amount of these debts was deductible for 1934 under the rule of *George H. Fraser*, 6 B. T. A. 997, and *Georgia Engineering Co.*, 21 B. T. A. 532.

It is possible both those cases are distinguishable from this case. But, in any event, I disagree with the conclusions of the Board in both of them and with that of the majority here. The opinions in the two cited cases stem from *Mason Machine Works Co.*, 3 B. T. A. 745. In that case the Board found as a fact that a constructive charge-off occurred during the taxable year. Neither in the present case nor in the *Fraser* and *Georgia Engineering Co.* cases, *supra*, was there a charge-off of any kind.

The controlling statutory provision, section 23 (k) of the Revenue Act of 1934, allows as deductions "debts ascertained to be worthless and charged off within the taxable year * * *." The meaning thus expressed is clear and unambiguous. I think Congress meant exactly what it said. To entitle a taxpayer to the reduction there authorized, he must perform two affirmative acts—and they must both occur "within the taxable year." To hold otherwise seems to me requires a rather flagrant violation of the statutory bounds of our jurisdiction and a trespass upon the constitutionally exclusive legislative function of Congress.

The Circuit Court of Appeals for the Second Circuit, in deciding *Ludlow Valve Manufacturing Co.* v. *Durey*, 62 Fed. (2d) 508, after our decisions in the *Fraser* and *Georgia Engineering Co.* cases, concisely states my position here:

Presumably so much of those debts as were charged off in 1915 and 1916 were ascertained to be worthless in those years, else they would not then have been written off, but *we merely suggest that. The important fact* is that, having previously been charged off, they could not be written off again in 1918. *Darling* v. *Commissioner* (C. C. A.) 49 F. (2d) 111; *Avery* v. *Commissioner* (C. C. A.) 22 F. (2d) 6, 55 A. L. R. 1277; *Stephenson* v. *Commissioner* (C. C. A.) 43 F. (2d) 348. To permit that would leave a taxpayer free to charge off bad debts whenever they were ascertained to be worthless and the exigencies

of his business required the entry and to let him take the deduction then or in a later year as he preferred. This would give him the opportunity to wait before claiming the deduction until there should be a year in which his income would be sufficient to allow him the maximum benefit, instead of taking it *as the statute required in the year when the debts were both ascertained to be worthless and charged off.* * * * [Emphasis supplied.]