SPORTWEAR HOSIERY MILLS, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Dicket No. 99254.   Promulgated July 17, 1941.

*George E. H. Goodner, Esq.,* for the petitioner.
*Bernard D. Daniels, Esq.,* and *Samuel Schultz, Esq.,* for the respondent.

OPINION.

SMITH: The first question for consideration is whether the petitioner is entitled to deduct from its gross income of 1936 more than $1,538.25 paid during that year to its secretary. The petitioner actually paid $4,000 for such services. The respondent disallowed the deduction of $2,461.75 as being in excess of reasonable compensation.

Section 23 of the Revenue Act of 1936 permits a taxpayer to deduct from gross income in the determination of net income:

(a) * * * All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

What constitutes a "reasonable allowance for salaries" is a question of fact, to be determined from all of the evidence in the case. See *Marble & Shattuck Chair Co.* v. *Commissioner*, 29 Fed. (2d) 393. The petitioner's president, Fannie Goldberg's son, testified that his mother's services were of great value to the corporation; that she shopped the stores of Philadelphia and New York for the purpose of purchasing hosiery and for obtaining ideas that might be helpful in the business. He also testified that it was she who was responsible for an innovation of manufacturing boys' and men's hosiery with elastic in the top of the sock which obviated the necessity of wearing garters, and that the petitioner was the first manufacturer of such hosiery. It does not appear, however, whether this innovation was prior to the time that Fannie Goldberg became an officer of the corporation or not. The witness could not tell how often Fannie Goldberg visited the office of the petitioner corporation during 1936. She attended directors' meetings and signed the minutes of such meetings, which, however, were prepared by counsel. She "occasionally" visited the office of the petitioner.

From a consideration of all of the evidence in this case we are of the opinion that reasonable compensation for Fannie Goldberg's services to the petitioner in 1936 was in the amount of $1,538.25. The disallowance of $2,461.75 of the claimed salary deduction is approved.

The second question for consideration is whether the petitioner is entitled to a specific credit under section 14 (c) (1) of the Revenue Act of 1936 of $5,000, or to a specific credit of $3,416.84, as determined by the respondent. The petitioner contends that it is entitled to a specific credit of the larger amount.

The respondent determined a surtax on undistributed profits in his deficiency notice as follows:

| | |
|---|---:|
| Taxable net income | $17, 783. 47 |
| Less: Normal tax | 1, 951. 85 |
| Adjusted net income | 15, 831. 62 |
| Less: Specific credit | 3, 416. 84 |
| Remainder subject to surtax | 12, 414. 78 |
| 7 percent on $1,583. 16 | 110. 82 |
| 12 percent on $1,583.16 | 189. 98 |
| 17 percent on $3,166.32 | 538. 27 |
| 22 percent on $3,166.32 | 696. 59 |
| 27 percent of $2,915.82 | 787. 27 |
| 7 percent of $3,416.84 (specific credit) | 239. 18 |
| Total surtax | 2, 562. 11 |

The petitioner does not contest the correctness of the respondent's computation except as to the amount of the specific credit. It would compute the surtax on undistributed profits as follows:

| | |
|---|---:|
| Adjusted net income | $15, 831. 62 |
| Less: Dividends paid credit | |
| Undistributed net income | 15, 831. 62 |
| Specific credit claimed | 5, 000. 00 |
| Net income subject to surtax | 10, 831. 62 |
| 7 percent of $1,583.16 | 110. 82 |
| 12 percent of $1,583.16 | 189. 98 |
| 17 percent of $3,166.32 | 538. 27 |
| 22 percent on $3,166.32 | 696. 59 |
| 27 percent of $1,332.66 | 359. 82 |
| 7 percent of specific credit (7% of $5,000) | 350. 00 |
| Total surtax | 2, 245. 48 |

Section 14 (c) of the Revenue Act of 1936 provides in part as follows:

(c) ADJUSTED NET INCOME LESS THAN $50,000.—

(1) SPECIFIC CREDIT.—If the adjusted net income is less than $50,000, there shall be allowed a specific credit equal to the *portion* of the undistributed net income *which is in excess of 10 per centum of the adjusted net income and not in excess of $5,000, such credit to be applied as provided in paragraph (2).* [Italics supplied.]

This provision of the law was drafted by the Conference Committee. There was no provision in the Revenue Bill of 1936, as it passed the House or the Senate, comparable to section 14 (c). The conference report throws no light upon the correct construction of the provision.

Article 14–3 of Regulations 94, promulgated under the provisions of the Revenue Act of 1936, provides in part as follows:

ART. 14–3. *Specific credit if adjusted net income is less than $50,000.*—Section 14 (c) provides for a specific credit in the case of a corporation which has an adjusted net income of less than $50,000. This specific credit is an amount equal to the excess of $5,000 or the total undistributed net income, whichever is less, over 10 percent of the adjusted net income and is to be deducted from the undistributed net income before computing the surtax. * * *

It then gives three examples for the computation of the total surtax on undistributed profits, namely, upon taxpayers having a net income of $1,000, of $25,000, and of $49,900. Under the respondent's regulations the taxpayer with a small undistributed net income is entitled to a proportionately larger (in reference to its total undistributed net income) specific credit than a corporation with a larger undistributed net income. Thus a taxpayer with a net income of $1,000 is entitled to a specific credit of $900; that with a net income of $25,000 to a specific credit of $2,500; and that with a net income of $49,900 to a specific credit of $10.

In each of the cases where adjusted net income is in excess of $5,000 the specific credit is computed as the difference between 10 per centum of the adjusted net income and $5,000. The respondent has interpreted the provision as meaning that the specific credit shall be only a "portion" of the undistributed net income regardless of the amount. The respondent has found that the petitioner's adjusted net income or undistributed net income for 1936 was $15,831.62. The "portion" of that adjusted net income "which is in excess of 10 per centum of the adjusted net income and not in excess of $5,000" is $3,416.84. This is in accordance with article 14–3 of Regulations 94.

The petitioner contends that the respondent's regulations and return Form 945 are not in accordance with the statute. It submits:

The portion of $15,831.62 [the undistributed net income determined by the respondent] which is in excess of $1,583.16 is $14,248.46. Thus, the credit would be $14,248.46, were it not for the last part of the provision "not in excess of $5,000" which limits it to $5,000.00. The allowable credit is then $5,000.00.

It will be seen from the foregoing that the petitioner would interpret the phrase "equal to the portion of the undistributed net income which is in excess of 10 per centum of the adjusted net income and not in excess of $5,000" as meaning that in every case where the excess of the adjusted net income over 10 per centum thereof is $5,000 or more the taxpayer is entitled to a specific credit of $5,000. Thus, a corporation with an adjusted net income of $49,900 would be entitled to the same specific credit as one with a net income of, for instance, $6,000, and a corporation with an adjusted net income of

$5,600 would be entitled to a specific credit of $5,000 whereas one with an adjusted net income of $5,000 would be entitled to a specific credit of only $4,500.

We think that the respondent's interpretation of the statute is correct. It was undoubtedly the intention of Congress to give a corporation with a small adjusted net income a larger specific credit under this provision of the law than a corporation with a large adjusted net income. The respondent's regulations give that interpretation to the statute. The petitioner's interpretation does not. The most that can be said for the petitioner's method of computation is that it is a possible interpretation of the statute. We think that the respondent's interpretation is the more reasonable one. It considers the word "portion" as referring to such part of the undistributed net income as falls between 10 per centum of the undistributed net income and $5,000. In other words, it uses the amount of $5,000 as a measuring stick, and includes within the measuring stick the 10 per centum of the undistributed net income. This interpretation gives every corporation with a large undistributed net income (but less than $50,000) a smaller specific credit than any corporation with a lesser undistributed net income, which is what we believe Congress intended. We approve the respondent's determination that the petitioner is entitled to a specific credit of $3,416.84 and reject the petitioner's contention upon this point.

The third question in issue is whether the petitioner is subject to unjust enrichment tax for 1936 and, if so, the amount thereof. The petitioner alleges that it is not liable for such tax on any of the following grounds:

(a) The rebates or credits which respondent seeks to tax were gifts or gratuities to petitioner by its vendors and are therefore not taxable.

(b) If it be held that the rebates or credits were not gratuities, then they were reductions in the purchase price of petitioner's goods and therefore do not constitute taxable income.

(c) If it be held that the rebates or credits were not gifts and did not constitute reductions in the purchase price of goods, but did constitute refunds of processing taxes paid by petitioner, then petitioner was not unjustly enriched.

(d) The tax on so-called unjust enrichment is unconstitutional, null, and void.

Relative to its first contention, the petitioner submits that $954.74 refunded to it by the Palmetto Yarn Corporation and $1,417.23 refunded to it by the Johnston Mills, two of its vendors, totaling $2,371.97, were refunded by vendors who were under no legal obligations to make the refunds. It therefore submits that these constituted gifts; that the petitioner received them as gifts; and that they are exempt from the unjust enrichment tax. Admittedly, these

amounts are included in the $2,737.29 upon which the respondent has based his computation of unjust enrichment tax.

Section 501 of the Revenue Act of 1936 provides in part as follows:

(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

\* \* \* \* \* \* \*

(2) A tax equal to 80 per centum of the net income from reimbursement received by such person from his vendors of amounts representing Federal excise-tax burdens included in prices paid by such persons to such vendors, to the extent that such net income does not exceed the amount of such Federal excise-tax burden which such person in turn shifted to his vendees.

The question arises as to what difference it makes whether the petitioner's vendors were under any legal obligation to make the refunds or rebates which were made. The unjust enrichment tax is imposed upon such reimbursements and in our opinion it is entirely immaterial whether the vendors were under any legal obligation to make the refunds or not. There is no evidence that they were made with a donative intent. It is common knowledge that many thousands of dollars were refunded under the same conditions that refunds were made by the Palmetto Yarn Corporation and the Johnston Mills. It would indeed be an anomalous situation that the liability to the unjust enrichment tax depends upon whether the vendors are legally liable to make the refunds. In our opinion there is no merit whatever in the petitioner's contention.

The second contention is that the refunds made by petitioner's vendors constitute "reductions in the purchase price of goods." Petitioner then submits that a reduction in the purchase price of an article does not constitute the realization of "income."

It is true that the refunds were made for the purpose of reimbursing the petitioner for a part of the price which was paid by the petitioner for the yarn. But the petitioner manufactured the yarn into hosiery and sold that hosiery to its customers, including in the sales price the burden of the processing taxes which it had paid to its vendors. The very purpose of the enactment of the unjust enrichment tax was to subject to tax gains of this character. In our opinion there is no merit in this contention.

The third contention is that it was not "unjustly" enriched by the receipt of the refunds. Whatever the petitioner may think with regard to the justness or unjustness of the tax, it is indubitably true that the petitioner obtained these refunds or rebates as a result of the holding of the Supreme Court in *United States* v. *Butler*, 297 U. S. 1, that the law imposing the processing taxes was unconstitutional.

Congress has declared that taxpayers who receive refunds of processing taxes without having borne the burden thereof have been unjustly enriched. We can see no merit in this contention of the petitioner.

The final contention of the petitioner is that the unjust enrichment tax is unconstitutional, null, and void. But the constitutionality of the tax has been upheld by numerous decisions of the courts. See *White Packing Co.* v. *Robertson*, 89 Fed. (2d) 775; *Louisville Provision Co.* v. *Glenn* (U. S. Dist. Ct., W. Dist. Ky.), 18 Fed. Supp. 423; *Union Packing Co.* v. *Rogan* (U. S. Dist. Ct., So. Dist. Cal.), 17 Fed. Supp. 934. See also *Helmbright* v. *Gebelein, Inc.* (U. S. Dist. Ct., Dist. Md.), 19 Fed. Supp. 621; *Anniston Mfg. Co.* v. *Davis*, 301 U. S. 337.

Reviewed by the Board.

*Decision will be entered for the respondent.*

DISNEY dissents.

---

MELLOTT, dissenting: It seems to me that petitioner's method of computing the specific credit under section 14 (c) accords with the statute. Its "undistributed net income" was $15,831.62. Its "adjusted net income" was $15,831.62. The "portion of the undistributed net income which is in excess of 10 per centum of the adjusted net income" ($15,831.62–$1,583.16) is $14,248.46. Since the credit may not exceed $5,000 petitioner is limited to that amount.

The majority approve the respondent's computation, which takes "the difference between 10 per centum of the net income and $5,000." If Congress had intended the specific credit to be "an amount equal to the excess of $5,000 or the total undistributed net income, whichever is less, over 10 percent of the adjusted net income" it could very easily have said so; but it did not. We should not distort the language used simply to allow a taxpayer with a small undistributed net income a proportionately larger credit than one with a larger income. This was taken care of by Congress when it denied the specific credit to a corporation having an adjusted net income in excess of $50,000. There is nothing in the act before us or in its legislative history to indicate that Congress intended to do aught than to allow a small corporation a specific credit of $5,000 provided the portion of its undistributed net income, which is not in excess of 10 per centum of its adjusted net income, equals that amount.

MURDOCH, LEECH, and TURNER agree with this dissent.