MICHAEL CARPENTER COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105718. Promulgated August 21, 1942.

---

*George D. Spohn, Esq.*, and *John S. Best, Esq.*, for the petitioner.
*S. U. Hiken, Esq.*, for the respondent.

630

OPINION.

ARNOLD: Petitioner asserts that the $660 item received from the International Milling Co. was erroneously reported as income in its 1936 return. Respondent in his amended answer alleges he erroneously included it in 1936 income. Thus both parties are in agreement that it should not be included in 1936 income, and we so hold.

Our findings show that in 1937 petitioner received $11,246.50 no part of which was reported as income in its 1937 return, but all of which was included as income by the respondent in determining the 1937 deficiencies. Petitioner now admits that $2,888.50 thereof was properly determined to be 1937 income as a tax benefit was derived by its predecessor to this extent because of flour included in the January 1, 1936, inventory. The issue with respect to 1937, therefore, relates only to whether the amount of $8,358 constituted taxable income.

Briefly, petitioner contends that, since the Wisconsin corporation's assets were acquired pursuant to a tax-free reorganization, all property received by it has the same basis in its hands as the property had in the hands of the transferor, section 113 (a) (7), Revenue Act of 1936; that the contract rights had a basis of $1.38 per barrel in the transferor's hands, and had the same basis in petitioner's hands; and that it received only $1 per barrel by virtue of the payments by the millers, and, therefore, realized no taxable income. As an alternative, petitioner contends that, even if the payments were not tax free under section 112 (b) (4), or if it is held that the basis thereof to petitioner is zero under section 113 (a) (7), nevertheless they are not taxable to it because the contract rights were capital assets and the mere liquidation of such assets gave rise to no taxable income. *McLaughlin* v. *Harr*, 99 Fed. (2d) 638; *Merchants Bank Building Co.* v. *Helvering*, 84 Fed. (2d) 478. Finally, petitioner contends that, if the pay-

ments were not received in settlement of contract rights, they were gifts which are excluded from gross income by section 22 (b)(3) of the Revenue Act of 1936.

By the bill of sale the Wisconsin corporation transferred certain properties, specified therein, plus all other property of whatever nature, real or personal, tangible or intangible, that it owned or in which it had "any interest whatsoever", in exchange for 840 shares of petitioner's capital stock. The language "any interest whatsoever" used in the bill of sale is broad enough to cover any claims, demands, or rights that the transferor had against its vendors. As between the Wisconsin corporation and the petitioner, the latter acquired any claims or rights that its transferor had, and, since such claims were acquired for stock along with the other capital assets of the transferor, each claim represented one of the capital assets involved in the reorganization. *McLaughlin* v. *Harr, supra.* Whether said claims were legally enforceable or not is immaterial here. The evidence shows that the claims were the subject matter of negotiations which led to settlements of at least a portion of the amounts claimed and that payment of the amounts agreed upon was conditioned upon a full and complete release and discharge from any and all liability on account thereof.

Section 113 (a)(7) of the Revenue Act of 1936 provides that where property is acquired after December 31, 1917, by a corporation in connection with a reorganization, the basis for determining gain or loss upon disposition of the property shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor at the time the transfer was made.

Petitioner contends that section 113 (a)(7), *supra*, applies to the exchange of December 23, 1936, and that under that section the "interest" or claims acquired from the Wisconsin corporation had the same basis in its hands that said claims had in the hands of the transferor. While we agree that section 113 (a)(7) applies, we can not agree that the basis of the claims in the transferor's hands was $1.38 per barrel at the time of exchange, or that any basis it may have had is available to petitioner. In our opinion any such basis had already been exhausted by the transferor, and the basis of such claims in the transferor's hands at the time of the exchange was zero. *National Bank of Commerce of Seattle* v. *Commissioner*, 115 Fed. (2d) 875, affirming 40 B. T. A. 72.

In the last cited case, as here, there was a reorganization, and petitioner admits that the same question would be presented except that there the reorganization was a taxable transaction, while here the reorganization is agreed to be tax free. We can attribute but little weight to the suggested distinction. Section 113 (a) (7) of the Revenue Act of 1936 used the term "reorganization" without regard to

whether the reorganization is tax free or not.  *Muskegon Motor Specialties Co.*, 45 B. T. A. 551, 559.

This proceeding and the *National Bank of Commerce of Seattle* case, *supra*, are similar in several important aspects.  In the cited case the transferors charged off certain debts ascertained to be worthless, and took such debts into account in determining their taxable income for the year deducted.  In this proceeding the transferor included the $1.38 per barrel in the cost of materials entering into its finished products and took said sum into account in determining the results of its 1935 operations.  Here the transferor's tax return for 1935 showed a net loss in excess of the amount of the processing tax included in the price of flour.  Similarly, in the *National Bank of Commerce of Seattle* case five of the transferors sustained net losses in an amount greater than the debts charged off and claimed as deductions, 40 B. T. A. 72, 74; and yet, the Circuit Court, in affirming the Board, held that the debts at the time of the transfer had a zero basis in the transferor's hands for the reason that they had been ascertained to be worthless and charged off in a prior year and deducted from income by the transferor banks in such prior year.  Having used up its cost basis, the transferor here had no cost basis that it could independently ascribe to "the claims" transferred, any more than the transferor banks had because of debts charged off prior to their transfer in the *National Bank of Commerce of Seattle* case.  As to each proceeding the cost basis had been accounted for prior to the exchange and cost could not again be taken into account in determining the taxable income of either corporation.

As an alternative, petitioner contends that, since the transferor derived no benefit tax-wise from thus taking the cost basis into account in 1935, it should be allowed the benefit which but for the reorganization would be available to the transferor.  We think the answer to this contention is to be found in the Supreme Court's decision in *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435.  The facts there show that a new corporation, organized for the purpose, took over the assets and business of another corporation in exchange for a portion of the new corporation's stock.  The old company had sustained a statutory net loss prior to the transfer which the new corporation sought to deduct under section 204 (b) of the Revenue Act of 1921.  In denying the deduction the Court pointed out that "the statutes have disclosed a general purpose to confine allowable losses to the taxpayer sustaining them, i. e., to treat them as personal to him and not transferable to or usable by another."  (P. 440.)

While we do not have here a question involving the deduction of a statutory net loss by an entity separate and distinct from the corporation sustaining the loss, we do have a comparable situation in that petioner, in reliance upon the rule announced in *Central Loan & Invest-*

*ment Co.*, 39 B. T. A. 981, seeks to offset $8,358 of its 1937 income by an equivalent amount of the 1935 net loss of its transferor. In the cited case the taxpayer was formed for the purpose of liquidating its predecessor corporation, which had been in the hands of a receiver for almost three years. Actually, the taxpayer there was the liquidating agent of its transferor, and the case was tried and decided upon the theory that the reorganization resulted in no change in corporate identity. Just the opposite is true here; and the separate identity of the transferor and transferee must be recognized, as it was in the *New Colonial Ice Co., supra.* Believing as we do that the situation here is governed by the rule announced in the latter case, we hold that the 1935 loss of the Wisconsin corporation was not transferable to or usable by petitioner, either directly or indirectly, and that the personal defense available to the transferor did not survive the transfer to petitioner.

Having determined that the claims petitioner acquired from the transferor constituted capital assets, and that said claims had a zero basis in the transferor's hands at the time of the exchange, it is apparent under sections 113 (a) (7) and 111 (a) that anything realized thereon by petitioner in 1937 constituted taxable income. As pointed out in the *National Bank of Commerce of Seattle* case, *supra*, when an asset with a zero basis is liquidated the taxpayer realizes a gain to the extent of the amount received. *Suffolk Co., Ltd.*, 42 B. T. A. 994, 996 (on appeal, C. C. A., 4th Cir.).

Petitioner's final contention is that, if the payments were not received in settlement of contract rights, they were gifts to be excluded from gross income under section 22 (b) (3) of the Revenue Act of 1936. A similar argument was advanced by the vendee-taxpayer in *Sportwear Hosiery Mills* v. *Commissioner* (C. C. A., 3d Cir.), 129 Fed. (2d) 376, affirming 44 B. T. A. 1026. We find the opinion of the court very pertinent to the issues here. It points out that the Board found no evidence of a donative intent and that it agreed with this finding. The court stated that the payments were income to the taxpayer, that the taxpayer and its vendor were involved in continuous business dealings, that it was not unreasonable to consider the payments or credits as made for maintaining good will and encouraging future business, and finally that, while the vendors sought a possible intangible benefit, the taxpayer realized a real profit. The court further stated that the refunds reduced the price paid by the taxpayer for the goods it had recently sold, thereby increasing the gain realized on those sales. Specifically, the court said: "It is at this increment of gain that the Unjust Enrichment Act was aimed. This additional profit constituted taxable income." See also *White Packing Co.* v. *Robertson* (C. C. A., 4th Cir.), 89 Fed. (2d) 775, and *Ben Bimberg &*

*Co.* v. *Commissioner* (C. C. A., 2d Cir.), 126 Fed. (2d) 412, 424. *Houbigant, Inc.*, 31 B. T. A. 954; affd., 80 Fed. (2d) 1012; certiorari denied, 298 U. S. 669.

In accordance with the foregoing discussion and authorities, we hold that the payments received from the milling companies during 1937 constituted taxable income of this petitioner for that year.

> *Decision will be entered that there is no deficiency for 1936. Decision will be entered for the respondent as to the year 1937.*