PAUL L. CASE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FANNIE I. CASE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 73767, 73768. Promulgated February 18, 1938.

*Ivan F. Phipps, Esq., Carl E. Davidson, Esq.,* and *Charles E. McCulloch, Esq.,* for the petitioners.

*William E. Davis, Esq., F. R. Shearer, Esq.,* and *B. M. Brodsky, Esq.,* for the respondent.

**OPINION.**

DISNEY: (1) The petitioner contends first that the transaction resulted in nonrecognizable gain or loss within the meaning of section 112 (i) (1) (B) and section 112 (b) (3) of the Revenue Act of 1928. The former defines the term reorganization as "a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred." The latter provides for nonrecognition of gain or loss "if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." The term control means "ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation." Sec. 112 (j).

The agreement of July 2, 1928, labels the transaction as a "reorganization wherein and whereby two corporations will own and operate the assets of the present corporation instead of one as heretofore", and provides that it should not be construed as a liquidation of the assets of the Peckham-Case Co. The designation of a plan as a reorganization is not enough. *Ballwood Co.*, 30 B. T. A. 644. There must be an actual reorganization, otherwise the statute is inapplicable. *Edison Securities Corporation*, 29 B. T. A. 483; affirmed on this point, 78 Fed. (2d) 85. The character of a distribution must be determined from its peculiar facts and not from the label the parties see fit to attach to it. *John Milton*, 33 B. T. A. 4; *Lincoln National Bank, Executor*, 23 B. T. A. 1304; affd., 63 Fed. (2d) 131; *Gossett* v. *Commissioner*, 59 Fed. (2d) 365.

The petitioner argues, in effect, that his tax liability from the transfers should be determined by treating each step as a separate transaction, instead of parts of a single transaction. He asserts that, so

considered, the first step was an exchange by Peckham-Case Co. of assets for the stock of Case Furniture Co., and that it comes squarely within section 112 (i) (1) (B), leaving the transferor in control; and that the second step was an exchange of petitioner's stock in Peckham-Case Co. for the stock of Case Furniture Co., meeting the terms of section 112 (b) (3).

We have said that the reorganization provisions of the statute, being exceptions to the general rule taxing gains and allowing deductions for losses, may not be availed of by a taxpayer unless he establishes a transaction coming clearly within their terms. *Warner Co.*, 26 B. T. A. 1225; *Dolomite, Inc.*, 28 B. T. A. 1271; *John C. Shaffer*, 28 B. T. A. 1294; *Charles Hall*, 31 B. T. A. 125. They are not applicable unless there is some continuity of interest on the part of the transferor or its stockholders in the transferred assets. *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U. S. 599, cited with approval in *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77. Whether the plan here consisted of two separate and distinct transactions, or a single transaction, is a question of fact. *Helvering* v. *Ward*, 79 Fed. (2d) 381; *Commissioner* v. *Harris*, 92 Fed. (2d) 374.

Is reorganization of a corporation to be found in the situation here at hand? Patently this transaction was not merger, consolidation, recapitalization, or mere change in identity, form, or place of organization. Such suggestion is apparently not presented, but if presented, is not tenable. Reorganization must be found, if at all, in the fact of transfer of corporate assets by one corporation to another and immediate control of such other corporation by the old corporation, or its stockholders.

The original contract, as above seen, recited that:

\* \* \* a new corporation will be formed to take over a portion of the assets of said Peckham-Case Company, and Paul L. Case will withdraw from said Peckham-Case Company and take over the management and ownership of such new corporation \* \* . \*.

Petitioner pleads:

\* \* \* the purpose being to bring about the result of a division of the assets of Peckham-Case Company, \* \* \* and the new corporation to be organized would take over and acquire eighty-five one hundred eighty-eights (85/188) of the assets of Peckham-Case Company, representing the interest of the shareholder Paul L. Case, in said corporation. \* \* \*

Petitioner testified that the real object of the agreement was to segregate his interests in the Peckham-Case Co. from Peckham's interest.

For more than one reason, we can not agree with petitioner's idea of reorganization. In the first place, we having found that the object of the whole matter was, as shown in the petition, the original contract, and by other evidence, the segregation of Paul L. Case's proportionate interest in the Peckham-Case Co. from that of C. V. Peckham, the real owner of all other stock, it is plain that to determine the question of reorganization the whole matter must be viewed together and that the first step in the transaction, the transfer of assets of the Peckham-Case Co. for stock of the Case Furniture Co., can not be viewed separately. *Wilbur F. Burns*, 30 B. T. A. 163; affd., 85 Fed. (2d) 8; certiorari denied, 299 U. S. 592; *Halliburton* v. *Commissioner*, 78 Fed. (2d) 265. To do so would be to disregard the prime object of the contract and to exalt a single step above the purpose of the whole transaction. It is apparent that Paul L. Case had a contractual right to the control of the stock of the Case Furniture Co. from the beginning of the transaction, and that upon completion of the transfer, regardless as to what point is considered the point of completion thereof, he, and not the Peckham-Case Co. nor the stockholders thereof, was in control of the stock of the Case Furniture Co. He was, in the terms of the contract, to have "management and ownership of such new corporation, the stock now held by Paul L. Case in said Peckham-Case Company to be transferred to said corporation in exchange for the capital stock in such new corporation", and, referring to issuance of the new corporation stock for assets of the Peckham-Case Co., "after which said stock shall be transferred to Paul L. Case in consideration of his assigning his present stock in Peckham-Case Company to said corporation." Petitioner pleads, "The new corporation to be under the management and control of Paul L. Case." That such contractual control prevents application of the reorganization statute has been often decided. *Hazeltine Corporation*, 32 B. T. A. 110; affd., on this point, 89 Fed. (2d) 513; *West Texas Refining & Development Co.* v. *Commissioner, supra.*

In *Commissioner* v. *Schumacher Wall Board Corporation*, 93 Fed. (2d) 79, considering the question of control under section 113 (a) (7) of the Revenue Act of 1928, the court said:

We agree with the holding of the Board. The statute is obviously intended to reach those cases where unfettered substantial control of a corporation survives a reorganization, regardless of subsequent disposition of that control. We do not believe it was intended to apply to a situation where there is a binding contract simultaneously performed, by which the stock merely passes through intermediate holders to those to whom the contract compels immediate delivery.

The holding by the Peckham-Case Co. of the stock of the Case Furniture Co., as was said in *Helvering* v. *Bashford*, 302 U. S. 454,

was "transitory and without real substance; it was part of a plan which contemplated the immediate transfer of the stock * * *."

Therefore we conclude that there was no corporate reorganization involved in the transaction before us, completed, as it was, only when ownership of the corporate stock had vested in petitioner, who had contractual control at all times over the corporate stock of the Case Furniture Co. There was lacking that continuity of interest which is of the essence of reorganization: on the contrary, the contract was entered into only in order to destroy continuity of interest and control—to segregate from the Peckham-Case Co. and its stockholder Peckham, the petitioner Paul L. Case and assets proportionate to his stockholdings, in the form of corporate stock. This end was accomplished, and when accomplished, neither the old corporation nor its stockholder had connection with, or control over, the new organization.

(2) Since the transaction herein involved has been held not to constitute reorganization, it follows that the segregation and distribution made to Paul L. Case was one in partial liquidation of the Peckham-Case Co., it being obvious that such distribution was no ordinary dividend, and there being no such contention. The petitioner does not contend that there was not distribution in partial liquidation in the event reorganization is denied, and pleads that the Case Furniture Co. stock was on July 24, 1928, of the value of $68,415.53, which is the value determined by respondent; but argues that such distribution was in 1931, when petitioner actually turned in his certificates of stock in the Peckham-Case Co. and received certificates covering the Case Furniture Co. stock. The Peckham-Case Co. distributed in partial liquidation to Paul L. Case a portion of its assets, to wit, corporate stock in the Case Furniture Co. The only question that remains, therefore, is as to whether such distribution was made in the taxable year.

It appears from allegations in the petition that Paul L. Case, Fannie I. Case, and M. H. Eustace were the directors of the Case Furniture Co.; that Paul L. Case was president and general manager; Fannie I. Case, secretary-treasurer; and M. H. Eustace, vice president; that pursuant to the agreement of July 2, 1928, there was presented at a meeting of the directors of the Case Furniture Co. on August 13, 1928, a written proposal from the Peckham-Case Co. to sell and transfer to the Case Furniture Co. $85/188$ of the assets of the Peckham-Case Co. in exchange for all the capital stock of the Case Furniture Co., and said proposal was accepted by the Case Furniture Co., and its officers were authorized and directed to, and did, issue and deliver to the Peckham-Case Co. all of its authorized capital stock (excepting therefrom three shares issued to the three directors of the

Case Furniture Co. to qualify them to serve as directors, but which were endorsed over to the Peckham-Case Co., so that company acquired all of the stock of the Case Furniture Co.), in full payment for $^{85}/_{188}$ of the assets of the Peckham-Case Co.; that the proposal from the Peckham-Case Co. recites that the inventory and valuation of its assets has just been concluded, and that it is proposed that the capital stock of the Case Furniture Co. is to be issued to the order of the Peckham-Case Co. upon delivery to the Case Furniture Co. of "proper instruments of transfer and conveyance of the above mentioned property and rights" (already referred to as "eighty-five one hundred eighty-eights of all of the assets of this corporation, including the merchandise, fixtures, accounts and other property"); that approval by the directors of the Case Furniture Co. of the proposal, by a proper resolution, will constitute contract between the two corporations; that such proposal was accepted by the directors of the Case Furniture Co., and the president and secretary were authorized to do all acts necessary to carry out the agreement consummated by the acceptance of the proposal and the taking over of the property, and to issue the 250 shares of capital stock to persons designated by the Peckham-Case Co.; and that the shares were thereby allotted to such respective persons. The petition also alleges that the stockholders of the Peckham-Case Co., on July 11, 1928, amended the articles of incorporation by changing the name of the corporation to Peckham Furniture Co., and by enlarging the powers and objects of the corporation, and that a certificate of amendment was thereafter filed in the office of the Secretary of State of Idaho.

Such allegations of fact in the petition are binding upon petitioner in the absence of proof to the contrary. *Henderson* v. *Carbondale Coal & Coke Co.*, 140 U. S. 25; *Cavender* v. *Cavender*, 114 U. S. 464; *Howard* v. *Halsted*, 296 Fed. 782; *Hilliard* v. *Lyons*, 180 Fed. 685; vol. 2, Wigmore on Evidence, 2d ed., p. 536.

Petitioner testified that the Peckham-Case Co. owned the Case Furniture Co. stock during the period thereafter up to December 1931. The Peckham-Case Co., under the proposals and intent of the original contract of July 2, 1928, and the above provisions accepted by the Case Furniture Co., could receive the Case Furniture Co. stock only upon delivery by proper instruments of transfer and conveyance of $^{85}/_{188}$ of the entire assets of the Peckham-Case Co. Since the petitioner and his wife, as the executive officers of the Case Furniture Co., had the matter of delivery of its stock for such a consideration in their hands, it is reasonable to conclude that they did not deliver the Case Furniture Co. stock until receipt of proper evidences of title, "proper instruments of transfer and conveyance", to the

"property and rights" constituting the consideration moving from the Peckham-Case Co., and therefore that the Case Furniture Co. received in 1928 such evidences of title as the consideration for the stock it passed to the Peckham-Case Co. in that year, and to which the Peckham-Case Co. then received legal title. Even if the division of the property between the two corporations may not have been completely consummated in that year, division of the assets does not negate the idea that an $85/188$ interest (undivided, if not divided), in the Peckham-Case Co. assets passed in 1928 to the Case Furniture Co. "Property and rights" indicates that undivided interests were referred to and considered, for the same corporate minutes referring thereto refer to the assets having already been inventoried, and evidence shows that at the same time the physical assets were largely divided between the corporations. Receipt by the Case Furniture Co. of title to the $85/188$ interest in the Peckham-Case Co. assets, as provided by the duly adopted proposal, is the only reasonable explanation of the fact of surrender by the petitioner of the stock in the Case Furniture Co. Petitioner had the burden of overcoming the presumption of correctness of respondent's determination of taxable distribution received in 1928, yet his admissions of the issuance of the Case Furniture Co. stock upon delivery of "instruments of transfer and conveyance" of the proper proportion of the assets of the Peckham-Case Co. confirm rather than refute the respondent's determination that such distribution was made. However, whether muniments of title passed or not, by delivery of its stock as consideration, the Case Furniture Co. took equitable title to $85/188$ of the assets of the Peckham-Case Co. We conclude that in 1928 the Peckham-Case Co. received legal title to the Case Furniture Co. stock, and that in consideration thereof the Case Furniture Co. received title to $85/188$ of the assets of the Peckham-Case Co.

But under the basic contract of July 2, 1928, the capital stock of the Case Furniture Co. was to be issued to the Peckham-Case Co., or its order, "*whereupon* said Peckham-Case Company shall transfer to said Paul L. Case the capital stock in such new corporation in exchange for the eighty-five (85) shares of stock held by said Paul L. Case in the Peckham-Case Company." In other words, the right of Paul L. Case to turn in his stock in the Peckham-Case Co. and receive all the stock of the Case Furniture Co. was coincident with the right of the Peckham-Case Co. to receive such stock in return for $85/188$ of its assets. Under the contract, the instant that the Peckham-Case Co., by delivery of a portion of its assets, became entitled to and did receive the capital stock of the Case Furniture Co., Paul L. Case had a right, and an obligation enforceable by the Peckham-Case Co., of accepting and receiving the Case Furniture Co. stock in return for

his stock in the older corporation. The Peckham-Case Co. did receive the Case Furniture Co. stock. It became the legal holder thereof; but in the same instant Paul L. Case became the beneficial owner thereof. His right thereto was secured not only by contract between the stockholders, but by adoption thereof by both corporations.

Under the contract, the Peckham-Case Co. could have secured from Paul L. Case specific performance of his duty to surrender his Peckham-Case Co. stock and accept the Case Furniture Co. stock. The fact that the $85/188$ of Peckham-Case Co. assets were not yet divided would not, under the provisions of the contract, have been a defense to him, for the contract, although it provides for and discusses division of the assets between the corporations, does not provide that such division shall take place before the issuance of Case Furniture Co. stock to the Peckham-Case Co., and consideration of the contract compels the opposite conclusion—as indeed is evidenced by the treatment the parties accorded the matter in transferring the Case Furniture Co. stock to the older corporation prior to complete adjustment of assets. The division of assets was not a condition precedent to passage of title to stock. The contract shows plainly that delay in the passing of title to stock was not expected. Paul L. Case was to "withdraw from said Peckham-Case Company and take over the management and *ownership* of such new corporation"; while "Peckham-Case Company shall continue operations under its present charter, its stock to be held by C. V. Peckham and M. H. Eustace and such associates as they may hereafter associate with." But though the tangible assets had been largely divided and the intangible assets were to be divided, in general, as collected, it was not expected that final adjustment could be had for at least a year, for provision was made for determination by the parties at the end of one year as to disposition of uncollected notes and accounts. The relative rights of the two corporations in the assets formerly held by the Peckham-Case Co. were the same, whether the assets were divided or undivided. Complete adjustment could come later. When the rights of the two corporations were determined, Paul L. Case's position in equity with relation to the stock of the new corporation was fixed. He owned the beneficial interest in the stock of that corporation, it could enforce its rights to an undivided $85/188$ of the assets of the old corporation, and the fact that the stock certificates did not pass between him and that company until 1931 did not delay the distribution of beneficial ownership of the stock in liquidation to him. A stock certificate is not stock and he was, by contract with the old stockholders of Peckham Co. and with both corporations, the stockholder owning the stock in the Case Furniture Co., even though stock certificates had not yet reached him. *Federal Grain Corporation*, 18 B. T. A. 242; *Anita Owens Hoffer*, 24 B. T. A. 22.

In *Elvira Scatena*, 32 B. T. A. 675, 678; affd., 85 Fed. (2d) 729, the respondent took a position analogous to that of the petitioner here—that a dividend paid by a corporation in stock of a second corporation was taxable in the year when "actual physical delivery of the certificates was made to the petitioner." We said in part:

\* \* \* His argument ignores the vital distinction between the ownership of an interest in a corporate enterprise and the certificates which are a mere evidence of that ownership. \* \* \*

\*          \*          \*          \*          \*          \*          \*

In *Minal E. Young, Executor*, 6 B. T. A. 472, the Board considered the same question on similar facts. In that case a resolution was passed by the corporation in 1918 declaring a dividend of certain stock owned by it in another corporation and held by voting trustees under a voting trust agreement. We held in that case that, notwithstanding there was no actual delivery of the certificates during the year 1918, the stockholders were nevertheless the recipients of income in that year and not in the year 1919. In support of the conclusion reached, we said:

Under the resolution of March 11, 1918, the taxpayers became the owners of their proportionate part of the voting trust certificate for the stock of the Salt Creek Producers Association, Inc., owned by the New York Oil Co. The resolution provided that the certificates of stock of the Salt Creek Producers Association, Inc., would be issued to the stockholders of the New York Oil Co. upon the surrender of their old certificates in the New York Oil Co. to be exchanged for new certificates or reduced par value. This, in our opinion, related merely to the receipt of the certificates representing the stock which became theirs by virtue of the resolution of March 11. While it may be true that a division or distribution by a corporation is not taxable to a stockholder who is on the cash receipts and disbursements basis until the amount of the distribution is made available to him, this does not mean that, when stock of one corporation is distributed by another, the certificate itself must actually be received before there can be taxable gain. Since a person may be a stockholder in a corporation without ever having received a stock certificate, the time of the actual receipt of the stock certificate is immaterial. The question is, when did the taxpayers become the beneficial owners of the stock of the Salt Creek Producers Association, Inc.? We think they became the owners thereof in 1918 by virtue of the resolution distributing the stock.

The "resolution distributing the stock" upon surrender of old certificates in the cited case corresponds to the contract, when adopted by the corporations herein, providing for transfer of Case Furniture Co. stock after the stock of the new corporation had been received by the old in consideration for transfer of a fractional interest in its assets.

As to retention by petitioner Paul L. Case of the Peckham-Case Co. stock: In considering a distribution in liquidation in *James P. Gossett*, 22 B. T. A. 1279, 1286, we said (and repeated in *Florence M. Quinn*, 35 B. T. A. 412 (414)), that "it is immaterial whether at the time of the distribution all or any part of the shares were surrendered or retired."

To the above considerations may be added the thought that under the record in this case the transaction, except actual exchange of stocks, was very largely at least concluded in 1928, even as to actual division between the corporations. "The merchandise and furniture and fixtures in the several stores were divided between the two corporations at the time of the inventory * * *"—so petitioner alleges, and the proof shows—and we have found from the evidence that the major portion of the general scheme under the contract of July 2, 1928, was carried out in 1928. In fact, it is not shown that the new corporation finally received more than what it received in 1928, and petitioner alleges that an intensive campaign to collect was started immediately after July 24, 1928, and that all notes and accounts receivable which were collectible were collected, so that apparently a very large share, at least, of the assets finally received by the Case Furniture Co. were actually in its possession in 1928. The petitioner Paul L. Case took charge of the three stores in that year as manager for the new corporation (as against one of which he had been manager prior to that time). Indeed, petitioner, referring to receipt by the Case Furniture Co. of assets of the Peckham-Case Co. of the value of $68,415.53, the division of the assets, and the adjustments made to equalize the division, states that it is unnecessary to show the adjustments "for the reason that the net value of the total assets of Peckham-Case Company, acquired by Case Furniture Company, was not changed." It is obvious, therefore, that what occurred in 1931 was adjustment, and not, in fact, division, that substantial division had already occurred, and that the Case Furniture Co. (which was not given the real estate, the principal item of difference) had already received its share of the assets of the old corporation. Certainly, with the burden upon him, petitioner has not shown that the complete distribution of assets to the Case Furniture Co. was not made in 1928. Final adjustment when made in 1931 was "as of" 1928, indicating that the parties at that time considered that in effect the segregation had taken place in 1928—consistent with the provisions of the contract and with petitioner's allegation of vote on August 11, 1928, to change the name of the Peckham-Case Co., and for that company to continue operation with Peckham and Eustace, and associates they might choose, as stockholders.

Under all of these circumstances, in addition to the above consideration of the beneficial ownership of the stock in petitioner Paul L. Case in 1928, we conclude that the final balancing of accounts between the corporations in 1931, even though it may have entailed some minor items of actual division of assets, is not sufficient to demonstrate that distribution of corporate stock was not made to

petitioner in 1928, or to overcome the presumption of correctness in respondent's determination of taxability in that year.

We therefore hold that petitioner received the Case Furniture Co. stock as a distribution in partial liquidation in 1928.

Section 291 provides for the imposition of a penalty of 25 per centum of the tax for failure to make and file a return within the time prescribed by law except in case a return is filed after such time and the failure to file was due to "reasonable cause" or not due to willful neglect. It has not been shown and no contention is being made that the petitioners filed a joint return or separate returns for the taxable year. The petitioners seek to have the penalty set aside on the ground, as we understand their argument, that their counsel advised them that they had no gross income or net income to report. Such advice, if given, is not sufficient to avoid the imposition of the penalty. The statute provides in unambiguous terms that a return must be filed to obtain relief from the penalty for any cause. *A-C Investment Association*, 24 B. T. A. 582; *Searles Real Estate Trust*, 25 B. T. A. 1115; *Scranton, Lackawanna Trust Co., Trustee*, 29 B. T. A. 698; affd., 80 Fed. (2d) 519; certiorari denied, 297 U. S. 723; *Harry D. Kremer*, 31 B. T. A. 566; *Douglas L. Edmonds, Administrator*, 31 B. T. A. 962; affd., 90 Fed. (2d) 14; certiorari denied, Oct. 11, 1937; *Schroeder Employees Thrift Club*, 36 B. T. A. 645. In *Dayton Bronze Bearing Co. v. Gilligan*, 281 Fed. 709, relied upon by the petitioners, the taxpayer filed a belated return. The imposition of the penalties was mandatory under the circumstances prevailing here.

Reviewed by the Board.

*Decision will be entered for the respondent.*