SCHWEITZER & CONRAD, INC., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 93464.    Promulgated March 5, 1940.

*Paul E. Shorb, Esq., W. P. Wormhoudt, Esq., C. M. Burlingame,
C. P. A.*, and *Howard Kroehl, C. P. A.*, for the petitioner.
*Dan Taylor, Esq.*, for the respondent.

534

## OPINION.

MELLOTT: The question is, What basis shall be used by petitioner in computing amortization and depreciation on the assets acquired by petitioner in 1930 from Illinois under the stipulated facts (summarized in our findings)? Petitioner contends that it is the "cost" to it of the assets; that in any event it is entitled to use Illinois' basis, increased by the gain recognized or taxed to Illinois or its stockholders; and that unless the applicable sections of the revenue acts allow it a basis equal to the predecessor's (Illinois) cost, plus the cash paid by it (petitioner) for the assets, the sections are unconstitutional. Respondent contends, and determined the deficiency upon the theory, that petitioner's basis is the cost of the assets to Illinois.

An examination of the applicable section of the Revenue Acts of 1934 and 1936 (section 114) discloses that the present question can not be determined merely by a reference to those acts. Section 114 states that the basis "upon which exhaustion, wear and tear and obsolescence are to be allowed * * * shall be the adjusted basis provided in section 113 (b) * * *." Section 113 (b), by its terms, refers to subsection (a) of the same section. Paragraph (12) of subsection (a) provides that if the property was acquired after February 28, 1913, in any taxable year beginning prior to January 1, 1934, and the basis thereof for the purposes of the Revenue Act of 1932 was prescribed by section 113 (a) (6), (7), or (9) of such act, then for the purposes of section 113 the basis shall be the same as the basis therein prescribed in the Revenue Act of 1932. Respondent contends that section 113 (a) (7) of the Revenue Act of 1932 is thus made applicable and it appears to be. It refers to the acquisition of property by a corporation after December 31, 1917, in connection with a reorganization. Inasmuch as the acquisition in question occurred during the time the Revenue Act of 1928 was in effect, it is necessary to determine first whether or not it was in connection with a reorganization and, if so, whether immediately after the transfer an interest or control in the property acquired of 50 per centum or more remained in the same persons. We

therefore go to the Revenue Act of 1928 for the purpose of determining whether or not there was a reorganization as defined in said section. The portion of the section relied upon by the respondent is 112 (i) (1) (A). The pertinent provisions of all sections to which reference has been made are shown· in the margin.[1]

Were the assets acquired in connection with a reorganization? In *Nelson Co.* v. *Helvering*, 296 U. S. 374, the facts were substantially the same as in the instant proceeding. In that case the Elliott Fisher Corporation organized a new Delaware corporation with 12,500 shares of nonvoting preferred stock and 30,000 shares of common stock. The Elliott Fisher Corporation acquired all of the 30,000 shares of common stock in the new corporation for $2,000,000 in cash. The new corporation then acquired substantially all of the properties of the John A. Nelson Co., paying therefor $2,000,000 cash and the entire 12,500 shares of preferred stock issued by it. The John A. Nelson Co. used part of the cash to redeem its own preferred stock and distributed the remainder, together with the 12,500 shares of preferred stock of the new corporation, to its stockholders. The John A. Nelson Co. did

---

[1] Section 114, Revenue Acts of 1934 and 1936.—

(a) Basis for Depreciation.—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property.

Section 113, Revenue Acts of 1934 and 1936.—

(b) Adjusted Basis.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(a) Basis (Unadjusted) of Property.—The basis of property shall be the cost of such property; except that—

■          *          *          *          *          *          *

(12) Basis established by Revenue Act of 1932.—If the property was acquired, after February 28, 1913, in any taxable year beginning prior to January 1, 1934, and the basis thereof, for the purposes of the Revenue Act of 1932 was prescribed by section 113 (a) . (6), (7), or (9) of such Act, then for the purposes of this Act the basis shall be the same as the basis therein prescribed in the Revenue Act of 1932.

Section 113 (a) (7), Revenue Act of 1932.—

(7) Transfers to corporation where control of property remains in same persons.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

Section 112 (i), Revenue Acts of 1928 and 1932.—

(i) Definition of Reorganization.—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation. or ·substantially all the properties of another corporation), or  *  *  *

not dissolve. The Supreme Court held that there was a statutory reorganization, and, among other things, said:

True, the mere acquisition of the assets of one corporation by another does not amount to reorganization within the statutory definition. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462, 53 S. Ct. 257, 77 L. Ed. 428, so affirmed. But where, as here, the seller acquires a definite and substantial interest in the affairs of the purchasing corporation, a wholly different situation arises. The owner of preferred stock is not without substantial interest in the affairs of the issuing corporation, although denied voting rights. The statute does not require participation in the management of the purchaser; nor does it demand that the conveying corporation be dissolved. A controlling interest in the transferee corporation is not made a requisite by section 203 (h) (1) (A) (26 U. S. C. A. § 112 note). This must not be confused with paragraph (h) (2) (26 U. S. C. A. § 112 note).

Petitioner attempts to distinguish the instant proceeding from the cited case on the ground that "the preferred stock in that case was sufficiently different from that in the present case to distinguish the two cases." The only difference, however, appears to be that in the *Nelson* case the preferred stockholder was expressly given the right to vote in the event of default in the payment of dividends and his stock was to be retired at stated intervals, whereas the preferred stockholders in the petitioner corporation had no voting rights and their stock could be redeemed upon 30 days' notice; but the fact that they had no voting rights does not mean that they did not have a substantial interest in its affairs. While petitioner's preferred stock was redeemable upon 30 days' notice, or sooner if the notice were waived, the agreement of July 1, 1930, contained no absolute requirement that the preferred stock need ever be redeemed in the absence of sufficient earnings. The differences between the preferred stock in the *Nelson* case and the preferred stock in the instant proceeding are not substantial enough to distinguish the two cases. It must be held that the acquisition of the assets was in connection with a reorganization. Cf. *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378, and *Helvering* v. *Watts*, 296 U. S. 387.

The next question is, Did an interest or control in the property of 50 percent or more remain in the same persons when the reorganization was consummated? If it did, petitioner must use the basis which the assets it acquired had in the hands of its transferor, *Bickford's Inc.* v. *Helvering*, 98 Fed. (2d) 568, unless it may be relieved from doing so upon some ground not heretofore discussed.

We agree with petitioner that, since the preferred stock had no voting rights of any kind, neither Illinois nor its stockholders had the 50 percent *control* in the transferred assets required by the statute. We do not agree with its contention, however, that neither Illinois nor its stockholders upon the completion of the transaction held a 50 percent *interest* in the transferred property. Petitioner's argu-

ment in support of this contention is that the value of the new corporation is established by the total consideration of $2,340,127.69 paid by the petitioner for the assets of Illinois; that the 12,500 shares of preferred stock (par value of $100 per share) issued to Schweitzer and Conrad must be reduced (a) by the 625 shares issued to Cassatt & Co., brokers, and (b) by the 2,375 shares redeemed two and one-half months after the date of the execution of the reorganization agreement and approximately two months after the date on which the reorganization was consummated; and that upon completion of the transaction, therefore, Schweitzer and Conrad, as individuals, owned only 9,500 shares, which gave them an interest of $950,000 in assets having a value of $2,340,127.69, or less than 50 percent. In other words, petitioner insists that the issuance of 625 shares to Cassatt & Co. and the redemption of the 2,375 shares be treated as part of the reorganization plan and as separate steps in a single transaction.

Whether or not the 12,500 shares issued to Schweitzer and Conrad should be reduced by the 625 shares issued to the brokers need not be discussed or decided; for, as we interpret the stipulated facts, the stockholders of Illinois owned a 50 percent interest in petitioner immediately after the transfer of the assets of the former if the redemption of the 2,375 shares be determined to have been a separate and distinct transaction, as respondent contends. It will be assumed, therefore, for the purposes of this decision that the 12,500 shares should be reduced by the 625 shares, leaving Schweitzer and Conrad owning 11,875 shares and an interest in the transferred assets of $1,187,-500 or more than 50 percent, unless petitioner's contention, that their ownership should be further reduced by the 2,375 shares redeemed, is sustained.

On brief petitioner urges that the redemption of 2,500 shares of the preferred stock (2,375 of which were owned by Schweitzer and Conrad) for cash, followed the acquisition of the Illinois assets so closely that, when considered with the provisions of the contract permitting redemption of all or part of the preferred stock on 30 days' notice, it is apparent the parties contemplated immediate redemption of these shares; that the slight difference in time between the transfer of Illinois assets and the redemption of the 2,500 shares of preferred stock does not control or demonstrate that the transactions were separate and distinct, citing *Portland Oil Co.*, 38 B. T. A. 757, 775; that the temporary holding of 2,375 shares of redeemed preferred stock by the Illinois stockholders was nothing more than a transitory ownership; and that, since the ownership was transitory, a 50 percent interest in the assets did not "remain" in Illinois or its stockholders within the contemplation and meaning of section 113 (a) (7) of the Revenue Act of 1932, *supra*. *Omaha Coca-Cola Bottling Co.*, 26 B. T. A. 1123;

*Paul L. Case*, 37 B. T. A. 365, 372; affd., 103 Fed. (2d) 283; *Helvering* v. *Bashford*, 302 U. S. 454, 458.

An examination of the reorganization plan or contract of July 1, 1930, discloses that the redemption of the transferred stock over an indefinite future period was provided for; but the provisions of the contract do not justify petitioner's statement that "immediate" redemption was contemplated. In this connection the following provisions of the contract with reference to the preferred stock are significant:

(c) * * * the Preferred stock shall be entitled to receive cumulative dividends at the rate of six per cent (6%) per annum from and after July 1, 1930, payable in quarterly installments of one and one-half per cent (1½%) on the fifteenth days of March, June, September and December of each year, beginning September 15, 1930, * * *: the Preferred stock shall be redeemable, in whole or in part, at any time on thirty (30) days' notice, at par, plus dividends accumulated and unpaid, and accrued to the date of redemption, and shall be entitled to be paid, on liquidation or dissolution, One hundred dollars ($100.00) per share, plus dividends accumulated and unpaid and accrued to the date of such payment, before any of the assets of the New Company shall be distributable to the holders of the Common Stock. * * * Second parties [Edmund O. Schweitzer and Nicholas J. Conrad], and each of them shall be elected members of the Board of Directors of the New Company and shall be entitled to remain as directors so long as they, or either of them, own any shares of the preferred stock. * * * The charter of the New Company shall further provide, with respect to such Preferred Stock, that, beginning with the earnings of the business for the calendar year 1931 and for each calendar year thereafter while any of said Preferred stock remains outstanding, the entire net earnings remaining after payment of taxes and Preferred dividends, but before deduction for exhaustion on patents, patent rights and other intangibles, shall be disposed of as follows: Ten per cent (10%) thereof may, at the option of its board of directors, be retained by the New Company for use as and for additional working capital; next there may be paid cash dividends of One hundred thousand dollars ($100,000.00) upon the Common stock, and all the remaining net earnings, determined as aforesaid, shall be applied to the redemption of the Preferred stock, but no fractional shares shall be redeemed. * * * The charter of the New Company shall further provide that the consent of the holders of at least two thirds (⅔) in interest of the Preferred stock then outstanding, given in person or by proxy, either in writing, or at an annual meeting or at a special meeting called for that purpose, shall be necessary for effecting the increase of the authorized amount of Preferred stock herein provided for, or the creation or issue of any stock having any preference or priority which is or would be superior to or on an equality with any preference or priority of the Preferred stock provided for herein.

The above quoted provision for the application of the 1931 earnings to the redemption of the preferred stock after making the specified deductions and payments indicates that at the time the contract of July 1, 1930, was executed it was the intention of the parties that the first redemption of preferred stock would occur either at the end of 1931 or sometime in 1932. Moreover, as of July 15, 1930, the stipulated and agreed closing date of the reorganization, there was no obligation on the part of the preferred stockholders to surrender their

stock for redemption, and no obligation on the part of petitioner to redeem its preferred stock within the taxable year 1930. Petitioner merely had, at the most, an option to redeem the preferred stock which it could exercise only by giving the required 30 days' notice to the preferred stockholders unless they waived their right to such notice. In other words, there was no contract requiring or entitling the petitioner, on the one hand, to redeem its preferred stock, or, on the other hand, requiring or entitling the preferred stockholders to surrender any part of the preferred stock for redemption. Cf. *Helvering* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496.

The "transitory" ownership of stock, recognized by the courts and this Board in the cases cited and relied upon by petitioner, has no application in a situation such as the one under consideration in the instant proceeding. In the cited cases the "transitory ownership" of stock was in individuals or corporations which acted merely as conduits for the passage of title to persons or corporations entitled to receive it by virtue of an arrangement or contract executed prior to, or constituting a part of, the reorganization. Most reorganization plans contemplate the retirement, sooner or later, of preferred stock of any new company provided for in the reorganization plan; but such retirement, occurring months or years later, is not, and never has been held to be, part of the reorganization plan. Cf. *Nelson Co.* v. *Helvering, supra.* If it were, the execution of the reorganization plan would be delayed indefinitely in most instances.

An examination of the contract of July 1, 1930, indicates that the parties intended that all of the steps essential to the execution of the reorganization plan should be executed on or before the "closing date." The closing date which they set and agreed upon was July 15, 1930. The situation of the parties on that date, rather than some subsequent date when part of the preferred stock was redeemed, is the important factor to be considered in determining whether or not Illinois or its stockholders owned 11,875 shares of the preferred stock of petitioner and therefore held more than the 50 percent interest in its property specified in section 113 (a) (7), *supra.* Under the provisions of this section petitioner's basis for amortization and depreciation of the patents and other assets acquired by Illinois must be held to be the same as it would be in the hands of Illinois, the transferor, unless the stipulated facts disclose that under the law applicable to the year in which the transfer was made gain was recognized to the transferor.

Petitioner next contends that, even though it be held that the assets of Illinois were acquired in connection with a statutory reorganization and that an interest of 50 percent or more in the transferred assets remained in Illinois and its stockholders, nevertheless under section 113 (a) (7) of the Revenue Act of 1932, *supra*, it is not limited to the

basis of Illinois, since that basis must be increased by the gain recognized to Illinois or its stockholders.

Illinois transferred assets to petitioner which had a cost or other basis to it of $588,012.91. In consideration for this transfer petitioner assumed liabilities amounting to $90,127.69, paid $1,000,000 in cash to the stockholders of Illinois, and issued to these stockholders 12,500 shares of its preferred stock (par value $100 per share), or a total consideration of $2,340,127.69. It is apparent, therefore, that, except for the reorganization provisions of the Revenue Act of 1928, the taxable gain to Illinois would have been $1,752,114.78. Under the provisions of section 112 (d) of the Revenue Act of 1928,[2] if a corporation, in pursuance of a plan of reorganization, receives other property or money in addition to stock and distributes such property or money to its stockholders, no gain is recognized to the corporation. Illinois authorized the distribution of the $1,000,000 to its stockholders, and was thus relieved of any taxable gain on the exchange unless the assumption of liabilities of $90,127.69 must be treated as "other property or money" received, in which event the $90,127.69 would constitute taxable gain.

Petitioner takes the position that the amount of the assumed liabilities and the $1,000,000 in cash should be added to the basis of the assets in the hands of Illinois in determining its basis for amortization and depreciation of the assets it acquired from that corporation.

Prior to the passage of the Revenue Act of 1939 a conflict existed as to the treatment to be accorded the assumed liabilities in determining the basis of the transferee corporation in situations such as the one here under consideration. In *Corpus Christi Terminal Co.*, 38 B. T. A. 944 (on appeal, C. C. A., 5th Cir.), this Board treated the assumption of a transferor's indebtedness by a transferee in consideration for the transfer of assets as the equivalent of the payment of cash in the amount of the indebtedness assumed, following *United States* v. *Hendler*, 303 U. S. 564, and held that the amount of the assumed indebtedness should be included in computing the recognizable gain to the transferor under section 112 (d) of the Revenue

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(d) SAME—GAIN OF CORPORATION.—If an exchange would be within the provisions of subsection (b) (4) of this section if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no gain to the corporation shall be recognized from the exchange, but

(2) If the corporation receiving such other property or money does not distribute it in pursuance of the plan of reorganization, the gain, if any, to the corporation shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property so received, which is not so distributed.

Act of 1928. In *Bickford's Inc.* v. *Helvering, supra*, the Circuit Court of Appeals for the Second Circuit held that the assumption of liabilities of an old corporation by a new corporation in connection with the acquisition of assets was not a payment of "property or money" which could be added to the basis of the old corporation's property, in the absence of a showing that such, assumed debts were paid during the taxable year. Since these decisions were rendered Congress has provided, in section 213 (f) of the Revenue Act of 1939,[3] that the assumption of indebtedness shall not be considered as "other property or money" received by the taxpayer within the meaning of subsection (c), (d), or (e) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue acts, unless, in the determination of the tax liability of the taxpayer for the taxable year in which, the exchange occurred, by a decision of this Board or of a court, or by a closing agreement, gain was recognized to the taxpayer by reason of such assumption. Section 213 (f) must be applied here; and, inasmuch as it does not appear from the record that any gain was recognized to Illinois by reason of the assumption of its indebtedness in the amount of $90,127.69 by the petitioner, petitioner is not entitled to have this amount added to the basis of the assets in the hands of Illinois.

Petitioner's contention that the $1,000,000 should be added to its basis is predicated largely upon the fact that Schweitzer and Conrad, Illinois' stockholders, paid a tax upon the cash received by them.

---

[3] SEC. 213. ASSUMPTION OF INDEBTEDNESS.

\* \* \* \* \* \* \*

(f) ASSUMPTION OF LIABILITY NOT RECOGNIZED UNDER PRIOR ACTS.—

(1) Where upon an exchange occurring in a taxable year ending after December 31, 1923, and beginning before January 1, 1939, the taxpayer received as part of the consideration property which would be permitted by subsection (b) (4) or (5) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, to be received without the recognition of gain if it were the sole consideration, and as part of the consideration another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition shall not be considered as "other property or money" received by the taxpayer within the meaning of subsection (c), (d), or (e) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, and shall not prevent the exchange from being within the provisions of subsection (b) (4) or (5) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts; except that if, in the determination of the tax liability of such taxpayer for the taxable year in which the exchange occurred, by a decision of the Board of Tax Appeals or of a court which became final before the ninetieth day after the date of enactment of the Revenue Act of 1939, or by a closing agreement, gain was recognized to such taxpayer by reason of such assumption or acquisition of property, then for the purposes of section 112 of the Revenue Act of 1938, and corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, such assumption or acquisition (in the amount of the liability considered in computing the gain) shall be considered as money received by the taxpayer upon the exchange.

(2) Paragraph (1) shall be effective with respect to the Revenue Act of 1924 and subsequent revenue Acts as of the date of the enactment of such Act.

The stock had cost them $33,447.22 and they received cash and preferred stock of the petitioner totaling not less than $2,237,500, so their gain amounted to over $2,200,000. The amount of their *taxable* gain, however, was limited, under the provisions of section 112 (c) of the Revenue Act of 1928, to the amount of the cash received. While petitioner's argument at first blush seems to be quite persuasive, its contention is not tenable.

Section 113 (a) (7) of the Revenue Act of 1932, *supra*, provides that the basis of the transferee corporation "shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor * * *." Petitioner urges that the word "transferor" should be construed to mean "transferor *or its stockholders*", and has attempted to show by reference to the legislative history of the section that Congress intended, when it used the word "transferor", to cover both the transferor corporation and its stockholders.

The courts and this Board have frequently held that, where the language of a statute is plain and susceptible of but one meaning there is no justification for resort to judicial construction. *Caminetti* v. *United States*, 242 U. S. 470, 485; *Swarts* v. *Siegel*, 117 Fed. 13, 18, 19; *John H. Watson, Jr.*, 27 B. T. A. 463. The word "transferor" is an ordinary word of well established meaning. It is generally defined to be "one who makes a transfer." Article 1 of the reorganization agreement of July 1, 1930, is replete with expressed warranties and representations that Illinois (not its stockholders) owned the patents and the other assets free and clear of all liens and encumbrances, except as therein stated. In article II it is stated that, upon payment of the $1,000,000 to the stockholders of Illinois, the "first party [Illinois] will surrender to the third party [Cutler-Hammer, Inc.] and third party will accept and take possession, control and management of the assets, property and business of the first party." The contracting parties apparently recognized that the real transferor of the property was Illinois and not its stockholders; and the fact that Illinois authorized the payment of all or part of the consideration which it was entitled to receive for its assets direct to its stockholders does not justify treating them as transferors of the assets. They were taxable to the extent of the cash received by them, not because they were transferors of the assets acquired by petitioner, but because they exchanged stock of one corporation for stock of another corporation and cash, pursuant to a plan of reorganization, both corporations being parties to the reorganization. Cf. *Royal Marcher*, 32 B. T. A. 76.

Section 112 (b) (4) of the Revenue Act of 1928 provides that "no gain or loss shall be recognized if a corporation a party to a reorgani-

zation exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

Petitioner points out that under section 112 (d) (1) and (2), *supra*, if Illinois had retained the cash and had not directed the distribution of it to its stockholders, it, under the provisions of section 113 (a) (7), *supra*, would be entitled to increase its basis by the amount of cash paid. It urges that it would require "an amazing construction of the taxing act" to make the petitioner's basis depend on whether the cash was retained by Illinois or distributed to its stockholders.

An examination of petitioner's argument upon brief indicates that it is of the opinion that Congress intended that the gain to the transferor corporation should go untaxed where, as in the instant proceeding, the receiving corporation immediately distributed or ordered the distribution of the cash it was entitled to receive for its assets to its stockholders. But we do not believe Congress had any such intention. It is true that in subdivision (1) of section 112 (d) Congress provided that no gain should be recognized to the transferor corporation where cash or other property was received in an exchange in addition to stock, and distributed in pursuance of the plan of reorganization; but the fact that Congress provided for the nonrecognition of gain to the transferor corporation under such circumstances does not mean that it intended that such gain should go untaxed. Nonrecognition of gain to the transferor corporation and nonrecognition of gain to both the transferor or transferee corporations are two different things. When the reorganization provisions of the statute provide for the nonrecognition of gain to the transferor, they usually provide a method by which the Government will realize a tax from the transferee. In other words, these provisions merely result in a postponement or deferment of the tax, and not its forfeiture by the Government. Cf. *Portland Oil Co.* v. *Commissioner*, 109 Fed. (2d) 479, affirming 38 B. T. A. 757. Provisions relating to the basis of the transferee, such as section 113 (a) (7), *supra*, must be read in this light; and in providing that the basis of the transferee is to be the basis in the hands of the transferor it is apparent that Congress intended that the transferee should take the assets subject to the income tax which might properly have been assessed to the transferor corporation but for the provisions of section 112 (d) (1), *supra*.

The final contention of petitioner is that unless the applicable sections of the Revenue Acts of 1934 and 1936 allow it a basis for the acquired assets and patents equal to its predecessor's cost plus the cash paid by it for the assets, they are unconstitutional. It argues: "It is elemental that under the Sixteenth Amendment to the Constitution,

Congress may only impose a tax upon income, and that if it imposes a tax on capital, it is violating that amendment, as well as the Fifth Amendment to the Constitution, and Article I, Section 2, Clause 3, and Article I, Section 9, Clause 4 of the Constitution." It also states: "The courts have repeatedly held that the Sixteenth Amendment does not permit a tax on the return of capital." Petitioner cites in this connection *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179, 185; *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, 335; *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, 364; and *Davis* v. *United States*, 87 Fed. (2d) 323.

Respondent concedes that Congress may not tax a return of capital as income, but contends that in requiring petitioner to use the basis of Illinois there is involved no tax on return of capital. His argument is that petitioner acquired the assets from Illinois pursuant to a plan of reorganization and took "the assets for which it exchanged its stock, subject to the portion of the income tax which might properly be assessed in the ultimate disposition of such assets." *Haas Building Co.*, 22 B. T. A. 528.

In *Taft* v. *Bowers*, 278 U. S. 470, the Supreme Court of the United States said: "The power of Congress to require a succeeding owner, in respect of taxation, to assume the place of his predecessor is pointed out by *United States* v. *Phellis*, 257 U. S. 156, 171, * * *", and "There is nothing in the Constitution which lends support to the theory that gain actually resulting from the increased value of capital can be treated as taxable income in the hands of the recipient only so far as the increase occurred while he owned the property. And *Irwin* v. *Gavit*, 268 U. S. 161, 167, is to the contrary."

On brief petitioner urges that, "while it is true that section 113 (a) (7), Revenue Acts of 1928 and 1932, and similar provisions of other revenue acts, have been held constitutional, it is likewise true that in none of the cases passing upon its constitutionality was the question of cash payments and resulting gain involved." Petitioner's statement is correct. See *Consolidated Utilities Co.* v. *Commissioner*, 84 Fed. (2d) 548; *T. W. Phillips, Jr., Inc.*, 23 B. T. A. 1272; affd., 63 Fed. (2d) 101; *Barnett Anchor Oil Co.*, 25 B. T. A. 746; *Perthur Holding Corporation* v. *Commissioner*, 61 Fed. (2d) 785; certiorari denied, 288 U. S. 616; *Newman, Saunders & Co.* v. *United States*, 36 Fed. (2d) 1009; certiorari denied, 281 U. S. 760; *Osburn California Corporation* v. *Welch*, 39 Fed. (2d) 41; *Sconset Oil Co.*, 26 B. T. A. 419; *Kay Finance Corporation*, 25 B. T. A. 913; *Haas Building Co., supra.* But we are unable to agree with its contention that the payment of cash in addition to stock renders the statute unconstitutional when the payment of stock alone does not have that effect. In each instance, assuming that the basis of the transferor is less than the value of the assets

acquired, the acquiring corporation gives up property having a value in excess of the basis prescribed by the statute; and, if the courts and this Board are correct in holding that Congress has the power to limit the basis to the basis of the transferor in one instance, we see no justification for holding that it has overstepped its power when it makes a similar limitation in the other.

It is our conclusion that petitioner took the assets of Illinois subject to the portion of the income tax which might properly have been assessed against the latter but for the provisions of section 112 (d) (1) of the Revenue Act of 1928, *supra*, and that the restriction of its basis under the provisions of section 113 (a) (7) of the Revenue Act of 1932 to the basis in the hands of Illinois did not result in a tax on capital, but was a deferred tax on profits which it was within the power of Congress to levy. We are of the opinion, therefore, that sections 113 (a) (12) of the Revenue Acts of 1934 and 1936, and section 113 (a) (7) of the Revenue Act of 1932, are not unconstitutional.

The respondent did not err in determining the deficiencies in tax.

Reviewed by the Board.

*Judgment will be entered for the respondent.*