MUSKEGON MOTOR SPECIALTIES COMPANY, A DELAWARE CORPORATION, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100097. Promulgated November 4, 1941.

*L. A. Masselink, Esq.*, for the petitioner.
*Paul A. Sebastian, Esq.*, for the respondent.

552

OPINION.

OPPER: Petitioner succeeded to the business of two corporations, the Gordon Co. and Muskegon Michigan, whose stockholders transferred shares in the old companies in exchange for stock of petitioner. As part of this transaction, new money was furnished by a banking syndicate and in effect distributed to stockholders of the original corporations, partly by means of the formation of subsidiaries and the distribution of their stock. These securities were held in *Flanders*

*Investment Co.*, 33 B. T. A. 483, to be taxable to the recipients as "other property" received in the reorganization, since the two subsidiaries were held not to be parties thereto. The stock of the petitioner received by the shareholders of the predecessor corporations consisted of over 50 percent of petitioner's voting stock, the bankers receiving the balance. Shortly after petitioner became the sole stockholder of the two corpo-. rations it acquired their properties and caused their dissolution.

We are required to determine the proper basis for depreciation[1] of the physical assets which petitioner thus acquired from the two predecessor corporations. This, in the ordinary case, would be petitioner's cost.[2] But there are exceptions, and respondent contends that one of these governs the present case. Specifically he urges that section 113 (a) (7) of the 1932 Act,[3] expressly made applicable to periods subsequent to January 1, 1934, by subsection (a) (12) of section 113,[4] requires us to find that the proper basis is not cost to petitioner, but that which prevailed in the hands of the transferor corporations.

The first requisite for approval of this contention is that the physical properties involved were acquired by petitioner "in connection with a reorganization." The transfer took place in 1928. The Board has heretofore taken the position that:

\* \* \* Inasmuch as the acquisition in question occurred during the time the Revenue Act of 1928 was in effect, \* \* \*. We therefore go to the Revenue

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION. [Revenue Act of 1934.]

(a) BASIS FOR DEPRECIATION.—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property.

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

\*        \*        \*        \*        \*        \*        \*

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

\*        \*        \*        \*        \*        \*        \*

[3] (7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME PERSONS.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

[4] (12) BASIS ESTABLISHED BY REVENUE ACT OF 1932.—If the property was acquired, after February 28, 1913, in any taxable year beginning prior to January 1, 1934, and the basis thereof, for the purposes of the Revenue Act of 1932 was prescribed by section 113 (a) (6), (7), or (9) of such Act, then for the purposes of this Act the basis shall be the same as the basis therein prescribed in the Revenue Act of 1932.

Act of 1928 for the purpose of determining whether or not there was a reorganization as defined in said section [113 (a) (7), Revenue Act of 1932]. [*Schweitzer & Conrad, Inc.*, 41 B. T. A. 533, 539, 540.]

Even, however, if it is the definition in the 1932 Act which controls, the result necessary would not be different; for the 1932 version of that definition is identical with the comparable provision of the prior act. Cf. *Lyon, Inc.*, 42 B. T. A. 1094. One of the statutory descriptions of a reorganization so appearing [5] is:

> * * * a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), * * *

Petitioner acquired directly all of the stock of Gordon and Michigan and indirectly all of their properties, and gave in exchange a majority of its voting stock. This transfer was accordingly a reorganization. *Nelson Co. v. Helvering*, 296 U. S. 374; *Helvering v. Minnesota Tea Co.*, 296 U. S. 378; *Miller v. Commissioner* (C. C. A., 6th Cir.), 84 Fed. (2d) 415. There was no lack of the continuing interest in the common stockholders which is necessary to distinguish a reorganization from a sale. Cf. *Le Tulle v. Scofield*, 308 U. S. 415. Voting control of petitioner remained in the former shareholders after the transfer. And, as will more evidently appear from subsequent discussion, this control of petitioner was held by those who had previously constituted the entire shareholding group of both the old companies.

An effort is made to convince us that the physical properties were transferred by the predecessor corporations in a separate distribution in liquidation and not as part of the reorganization. But petitioner concedes that "the liquidation [of the predecessors], although contemplated at the time petitioner was organized, was permissive." We regard it as now settled law that an optional procedure "will be treated as a part of the plan if it is a contemplated possibility under the plan and actually eventuates." *Anheuser-Busch, Inc.*, 40 B. T. A. 1100, 1106; affd. (C. C. A., 8th Cir.), 115 Fed. (2d) 662; certiorari denied, 312 U. S. 699.

> * * * It is equally clear that a plan must be viewed as a whole and that if the transferred property, although designed to pass temporarily through one corporation, is intended to rest permanently in another, the holding by the first may be of such a transitory nature as to be without real substance. [*Gertrude B. Chase*, 44 B. T. A. 39.]

We can not agree that the physical properties were not acquired by petitioner "in connection with" the reorganization. And see *Muskegon Motor Specialties Co.*, 35 B. T. A. 851.

---

[5] Revenue Acts of 1928 and 1932, sec. 112 (i) (1) (A).

Nor is it material that there may have been no "tax-free" reorganization, a question we need not decide. Petitioner advances *Muskegon Motor Specialties Co., supra,* as controlling our decision here since it involved the same transaction. But, giving its argument the broadest possible scope, the most that can be said for it is that respondent, by conceding on his brief there that "respondent's position that the assets were acquired in a nontaxable reorganization can not be maintained," consented to a determination that this transaction did not constitute a reorganization which was "tax-free." Assuming, without deciding, that a similar conclusion is binding here under the doctrine of *res judicata,* it still leaves petitioner no better off. For in 113 (a) (7), unlike 113 (a) (6) the section relied upon in *Muskegon Motor Specialties Co., supra,* the term used is "reorganization" without any reference to nonrecognition of gain, and if there be a reorganization it is not necessary that it be "tax-free." In *National Bank of Commerce of Seattle,* 40 B. T. A. 72, 77; affd. (C. C. A., 9th Cir.), 115 Fed. (2d) 875, the Board held that as to:

* * * transfers * * * made in connection with a reorganization (even though not a tax-free reorganization) * * * section 113 (a) (7) of the Act of 1934 is applicable.

If the *Muskegon* case is relevant here at all it is rather in an aspect detrimental to petitioner's position, for the Board there said:

* * * Considering all the evidence, it is our opinion that the dissolution of the two companies and the acquisition of their assets by the petitioner were all a part of the original plan of consolidation * * *.

However, we prefer to record no conclusion as to the binding quality of that decision, and to base our view in this aspect of the case on the strict ground that no "tax-free" reorganization is required to bring 113 (a) (7) into play.

The next question is whether, granting that the properties were acquired in connection with a reorganization, the requirement is met that "immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them." It is not entirely clear whether this necessitates that the continuing interest be held by all of the same persons who previously held a majority interest or control since the language is "the same persons or any of them." But we can assume for present purposes the correctness of petitioner's contention that use of the word "remained" imports that premise. See *Rex Manufacturing Co.,* 37 B. T. A. 984; reversed other grounds, 102 Fed. (2d) 325. For even so, we think the facts show that not only a majority, but all of the previous shareholders retained stock ownership. In the instance of Michigan, that conclusion admits of no debate. All the stockholders of that company participated in the plan. As to Gordon, while some,

in fact a majority of the erstwhile owners had granted options for cash sales of their stock, these had in effect been exercised before the plan went into effect. L. O. Gordon, to whom the options ran, became thereby the owner of all the Gordon stock. His deposit of that stock in escrow under the plan was at once the necessary premise for the inception of the plan, and an act so inconsistent with any other ownership that we have no difficulty in ascribing to him the entire proprietorship of all of Gordon's stock. Only thus can be justified the statement in the proposal that it had been "unanimously agreed upon * * * by all the stockholders of L. O. Gordon Manufacturing Company."

Nor are we impressed by the contention that after the transfer this group held less than the 50 percent interest or control specified in the statute. It is possible that taking the liquidating values of petitioner's assets and apportioning them between the Gordon and Michigan shareholders, on the one hand, and the new interests holding the class A stock with its partial preferences, on the other, the dollar value attributable to the latter might outweigh that of the common stock held by the former. It is also conceivable that the market value of the one might exceed that of the other. But such considerations, while perhaps relevant if the statute were limited to prescribing the value of merely an "interest", overlooks the significance of the word "control" which is coupled with "interest" in the disjunctive. We think it idle to suggest that those owning a majority of the voting stock of an enterprise do not control it. Cf. *Nelson Co.* v. *Helvering*, *supra.* And that is all the provision requires.

Finally, we are asked to hold that even if we find section 113 (a) (7) to be applicable, as we do, the basis in petitioner's hands may nevertheless be computed by adding to the basis of its transferors so much of the gain on the transfer, received in the form of cash and "other property", as was contemporaneously taxable to the participating stockholders. This would necessitate the conclusion that the latter were "transferors", a result we find it impossible to reach in the face of *Schweitzer & Conrad, Inc., supra.* On the authority of that case, disposition of this contention, as well as of any question of the retroactivity or constitutionality of section 113 (a) (7) in its application to a prior reorganization, must be unfavorable to petitioner. *Hartford-Empire Co.*, 43 B. T. A. 113, upon which petitioner relies, dealt with a different question. The facts as they there appear do not indicate that any gain of the old shareholders had been taxable. The present question was not and apparently could not have been raised by the taxpayer nor was it discussed or decided by the Board.

Reviewed by the Board.

*Decision will be entered for the respondent.*